# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-3259

_____

| | | |
|---|---|---|
| RJT Investments X; Randall J. Thompson; Tax Matters Partner, | * * * | |
| Appellants, | * * | Appeal from the United States Tax Court. |
| v. | * * | |
| Commissioner of Internal Revenue, | * * | |
| Appellee. | * | |

_____

Submitted: March 15, 2007
Filed: July 2, 2007

_____

Before WOLLMAN, JOHN R. GIBSON, and MURPHY, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

RJT Investments X, LLC (RJT) and its tax matters partner, Randall Thompson, appeal from the judgement of the United States Tax Court[1] sustaining (1) adjustments sought by the Commissioner of the Internal Revenue Service (The "Commissioner" or the "IRS") to RJT's 2001 tax return and (2) the imposition of a penalty for income tax underpayment resulting from gross valuation misstatements and negligence or disregard of rules and regulations pursuant to 26 U.S.C. § 6662(a), (b)(1), (b)(3), (c), (e) and (h). We affirm.

---

[1]The Honorable David Laro, United States Tax Court Judge.

## I. Background

Thompson formed RJT on October 11, 2001. On October 18, 2001, Thompson and Deutsche Bank loaned each other an identical amount of money and sold to one another, for approximately $20 million, nearly identical "bonus coupons" payable if certain conditions were met.[2] The loan repayment date and coupon redemption date were both December 18, 2001. Thompson contributed to RJT approximately $1 million in cash as well as the bonus coupon he purchased. Further, he assigned to RJT the burden of having to pay the redemption costs associated with the bonus coupon he had sold to Deutsche Bank. On December 18, neither RJT nor Deutsche Bank made principal repayments or payments associated with coupon redemption. Thompson liquidated his interest in RJT on that same day and received a single $1 million cash distribution of RJT assets. RJT did not report either the bonus coupon contribution or the assignment of its bonus coupon obligation in its partnership return (Form 1065). On Thompson's individual income tax return, however, he reported a short-term capital loss of approximately $21 million resulting from RJT's liquidation. He used that loss to shelter other income from taxation. He computed the loss by subtracting his purported outside basis of $22 million in RJT from the liquidation proceeds.[3] The purported outside basis included the cash contribution and the $20 million he paid Deutsche Bank for the bonus coupon he subsequently contributed to RJT. Thompson did not reduce the value of his basis by the value of the obligation for the bonus coupon he sold to Deutsche Bank that he had assigned to RJT.

---

[2]The parties appear to have intended the bonus coupons to function as offsetting call options, though they might not technically qualify as such. The coupon sold to Thompson was redeemable only if the exchange rate of the pound was less than or equal to $1.4052. The coupon sold to Deutsche Bank, on the other hand, did not indicate whether the coupon was redeemable when the exchange rate of the pound was greater than, less than, or equal to $1.4052. The precise characterization of these instruments, however, is inconsequential to our analysis.

[3]The record does not establish how Thompson arrived at a basis of $22 million.

The IRS did not pursue Thompson in a deficiency proceeding; nor did it initiate a consistency proceeding to make Thompson's 1040 consistent with the values set forth in RJT's 1065. The statute of limitations period for initiating these proceedings has since lapsed. Instead, the IRS issued a notice of Final Partnership Administrative Adjustments (FPAA) to RJT's 1065. Issuing a FPAA allows the IRS to make the specified adjustments to partnership filings and impose penalties for misrepresentations that result in the underpayment of taxes by individual partners should relevant parties not challenge the adjustments.[4] In this case, the IRS sought to declare RJT a sham, zero out all entries on RJT's 1065, and impose penalties for misrepresentations and negligence resulting in tax underpayment. RJT and Thompson challenged the FPAA in the United States Tax Court by filing a readjustment petition pursuant to the Tax Equity and Fiscal Responsibility Act of 1982 ("TEFRA"), 26 U.S.C. §§ 6221-6233. The Tax Court determined, as a partnership item, that RJT Investments X, LLC was a "sham, lacked economic substance and was formed and/or availed of to artificially overstate the basis of the interest of Randall Thompson . . . in the amount of $22,006,759 for purposes of tax avoidance" (hereinafter "sham, etc."). It then imposed penalties for the resulting underreporting of taxes.

The issue before us on appeal is whether the Tax Court properly characterized RJT's "sham, etc." status as a "partnership item" determination.

## II.

As previously mentioned, when the IRS disagrees with a partnership's reporting of a partnership item, it must issue a notice of a FPAA before imposing any assessment against the partners attributable to the item. 26 U.S.C. §§ 6223(a)(2),

---

[4]Partnerships do not themselves pay taxes. Instead, relevant partnership related filings are used by the individual partners to compute their own tax liability for their interest in the partnership.

(d)(2), 6225(a). The partnership then has the opportunity to challenge the FPAA. TEFRA grants jurisdiction to qualified courts to hear readjustment petitions. 26 U.S.C. § 6226(a), (b). Under the act, a court in which a petition has been properly filed has jurisdiction to make determinations only of "[the partnership's] partnership items . . . for the partnership taxable year to which the notice of [the FPAA] relates, the proper allocation of such items among the partners, and the applicability of any penalty, addition to tax, or additional amount which relates to an adjustment to a partnership item." 26 U.S.C. § 6226(f).

The Internal Revenue Code defines "partnership item" as "[(A)] any item required to be taken into account for the partnership's taxable year under any provision of subtitle A[, (B)] to the extent regulations prescribed by the Secretary provide that . . . such item is more appropriately determined at the partnership level than at the partner level." 26 U.S.C. § 6231(a)(3).[5]

### A. "Required to be taken into account under . . . subtitle A"

RJT and Thompson first contend that the "sham, etc." status cannot constitute a partnership item because no provision of subtitle A explicitly requires that a partnership make such a determination for purposes of deriving individual income tax. They assert, as a result, that the Tax Court improperly broadened the partnership item definition by effectively substituting "regarding any provision of subtitle A" for the "required to be taken into account . . . under any provision of subtitle A" language. We find Thompson's argument unavailing and contrary to TEFRA's language and intent.

To begin, we disagree with RJT and Thompson's premise that the legal validity of a partnership is not something "required to be taken into account" for income tax

---

[5]Subtitle A of the Internal Revenue Code contains the provisions relevant for the assessment of income tax.

calculation purposes. When filling out individual tax returns, the very process of calculating an outside basis, reporting a sales price, and claiming a capital loss following a partnership liquidation presupposes that the partnership was valid. Even if the partnership's validity is, in some instances, assumed, the proper resolution of a partner's income tax is no less dependant on the correctness of that assumption.

Additionally RJT and Thompson misread the statutory language when they argue that the "sham, etc." status cannot be a partnership item because subtitle A does not reference it. Their interpretation effectively and improperly replaces the actual language "required . . . *under* any provision" with "required . . . *by* any provision." The word "under" is typically used to broadly describe relevance or relatedness to the overarching concept. "By," on the other hand, connotes a distinct and explicit link connecting one thing to another.[6] Accordingly, the statutory language itself provides room for partnership items that, even in the absence of an explicit subtitle A reference, are nevertheless necessary for income tax calculation purposes. Cf. Weiner v. United States, 389 F.3d 152, 155-58 (5th Cir. 2005) (finding a broad definition by relying, in part, on regulatory language).

---

[6]Two relevant dictionary definitions of "under" include (1)" below or beneath so as to be . . . covered, protected, or concealed by" and (2) "subject to the authority, control, guidance, or instruction of." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 1287 (10th ed. 1998). Of those, only the "instruction of" part of the second definition even comes close to the relevant definition of "by," which is "according to." Id. at 157 (providing the dictionary definition of "by").

This interpretation is supported by case law as well.[7] For example, the majority of courts faced with the question have considered the running of TEFRA's statute of limitations to be a partnership item.  See, e.g., Weiner, 389 F.3d at 157 (collecting cases); Slovacek v. United States, 36 Fed. Cl. 250, 255 (Fed. Cl. 1996); see also Chimblo v. Comm'r, 177 F.3d 119, 125 (2nd Cir. 1999).   This result could not be reached by what we understand to be RJT and Thompson's narrow reading of the "required to be taken into account under subtitle A" language.   The statute of limitations under TEFRA is governed by subtitle F, not subtitle A.   When addressing an identical argument to that presented by RJT and Thompson as it pertained to the statute of limitations, the court in Weiner observed that the absence of the statute of limitations from subtitle A does not alone defeat the conclusion that the statute of limitations is a partnership item because the partnership item definition "is broad enough to include in its parameters legal and factual determinations *not* specifically found in subtitle A."  Weiner, 389 F.3d at 157 n.3.

RJT and Thompson have not presented a compelling reason to distinguish the partnership's status as a "sham ,etc." from our treatment of the statute of limitations. There are reasons to treat it similarly, however.   Status as a "sham, etc." directly affects various components relevant for income tax reporting.   It not only may render a "thumbs-up or thumbs-down" verdict on other relevant partnership item entries, see Weiner, 389 F.3d at 152 (noting how the statute of limitations affects the tax reporting process), but also, in the event of a legally incognizable partnership, it dictates whether certain income tax concepts are even applicable.  The IRS notes, for example,

<hr/>

[7]We note in passing that the Commissioner cites River City Ranches #£1 Ltd. v. Commissioner, 401 F.3d 1136 (9th Cir. 2005), as direct precedent on point. There, the Ninth Circuit held that the classification of tax-motivated sham transactions constituted a partnership item determination.  Id. at 1143-44.  River City Ranches is of limited persuasive value, however, because the parties agreed that the classification was a partnership item, making it unnecessary for the court to consider and rule upon any argument in favor of a contrary interpretation.

that for individual tax reporting purposes, one cannot take into account startup investment costs for an illegitimate, legally unrecognizable partnership.

Furthermore, RJT and Thompson's interpretation runs counter to congressional intent. TEFRA was intended, in relevant part, to prevent inconsistent and inequitable income tax treatment between various partners of the same partnership resulting from conflicting determinations of partnership level items in individual partner proceedings. Randell v. United States, 64 F.3d 101, 103-04 (3rd Cir. 1995) (describing the goals of TEFRA and the problems TEFRA was intended to address); see also H.R. CONF. REP. NO. 97-760, at 599-600 (1982), *reprinted in* 1982 U.S.C.C.A.N. 1190, 1371-72. With that intention in mind, we can think of few examples more emblematic of a congressionally envisioned partnership item than the one before us here. The resulting tax treatment of two partners in the same partnership could vary substantially if the court in one partner's deficiency proceeding recognized the legitimate existence of the partnership and the court in the other proceeding decided to disregard the partnership as a matter of law. Accordingly, even were there some ambiguity in the act's language, we would choose the interpretation consistent with Congress's clear intention when enacting TEFRA. "Sham, etc." status, then, meets the first of TEFRA's two threshold requirements for consideration as a partnership item.

### B. More appropriately determined at the partnership level

As previously stated, however, the Secretary of the Treasury must also consider a partnership item to be something more appropriately determined at the partnership level. Although RJT and Thompson do not challenge the validity of the Treasury regulation at issue, they contend that no fair reading of it allows for the conclusion that the Secretary made such an assessment with respect to "sham, etc." status. We disagree.

The Treasury regulation includes within the "partnership item" classification "*the legal* and factual determinations that underlie the determination of the amount, timing, and characterization of items of income, credit, gain, loss, deduction, etc." 26

C.F.R. § 301.6231(a)(3)-1(b) (emphasis added). Examples of such legal and factual determinations falling within the partnership item ambit include, among other things, the partnership's method of accounting, its inventory method, and even "whether partnership activities have been engaged in with the intent to make a profit for purposes of § 183." Id. As an underlying legal determination with direct bearing on the items mentioned, the status of the partnership as a "sham, etc." falls squarely within this definition. The regulation does not limit its applicability to line items and technical accounting issues as RJT and Thompson suggest. Finally, just as Thompson and RJT have failed to justify treating "sham, etc." differently from our treatment of the statute of limitations with respect to the statutory language, they have also failed to present us with any reason to distinguish our treatment of "sham, etc." from the statute of limitations under the language of the regulation. In fact, RJT and Thompson even acknowledge that the statute of limitations is a valid partnership item under the regulation. Accordingly, the Tax Court correctly treated as a partnership item its determination that RJT is a "sham, etc."[8]

The judgment is affirmed.[9]

---

[8]RJT and Thompson also argue that shams are intensely factual inquiries that involve, to some extent, the discovery of individual partner intent. They contend that this makes sham determinations inappropriate in partnership level proceedings. Assuming that in some cases shams may indeed not be partnership items, in the present case objective facts suffice to demonstrate the sham nature of a partnership without necessitating an additional individualized inquiry. In any event, Congress vested in the Secretary of the Treasury, not in the federal courts, the authority to weigh and decide what items are most suitably ascertained at the partnership level.

[9]RJT and Thompson, in a footnote, propose that if the Tax Court had jurisdiction to declare the partnership a sham, then its conclusion that the partnership is a sham is not supported by the evidence. Other than citing the standard of review and noting that sham determinations are conclusions of law, they neither point to specific elements that are unsupported by the facts nor do they raise favorable legal precedent for the purpose of contesting the sufficiency of those facts. See SmithKline Beecham Corp. v. Apotex Corp., 439 F.3d 1312, 1320 (Fed. Cir. 2006) (holding that undeveloped arguments are waived and collecting cases that have held the same).