Holmes, J., dissenting: I agree with part II of the majority opinion — that collateral estoppel precludes the Thompsons from relitigating the issues of whether outside basis is a partnership item and whether we had jurisdiction at the partnership level to sustain the 40-percent penalty for misstating it. I agree with part I of the opinion where it says that the “applicability or inapplicability of deficiency procedures under section 6230 is statutorily mandated” and that deficiency procedures either apply or don’t apply, depending upon whether the deficiency is attributable to any affected items that require partner-level determinations. But I disagree with the majority’s holding that the final computation of the Thompsons’ income tax liability requires no partner-level determinations, which means that I also have to disagree with their decision to dismiss the Thompsons’ entire case for lack of subject matter jurisdiction. I write separately because I fear that the majority’s analysis of whether an “affected item requires partner-level determinations” is wrong, and will further muddy this already turbid TEFRA pond. I. The Commissioner’s argument that we lack jurisdiction depends largely on the related partnership case, RJT Invs. X, LLC v. Commissioner, docket No. 11769-05 (June 6, 2006), affd. 491 F.3d 732 (8th Cir 2007). In that case we found that the Thompsons’ partnership was “formed and/or availed to overstate artificially the basis of the interest of Randall Thompson in rjt Investments X, LLC in the amount of $22,006,759 for purposes of tax avoidance.” We also upheld the penalties that related to those determinations — over the objections of RJT that we had no jurisdiction to do so — and entered decision in the case. The Eighth Circuit affirmed in RJT Invs. X v. Commissioner, 491 F.3d 732 (8th Cir. 2007).[1] After the partnership proceedings, the Commissioner issued a notice of deficiency which made four adjustments: • Eliminating the $206 of dividend income reported on petitioners’ 2001 Schedule B, Interest and Ordinary Dividends, as income from RJT’s Schedule K-l; • Eliminating the $12,415 capital loss reported on petitioners’ 2001 Schedule D, line 5, as a flowthrough loss from rjt’s Schedule K-l; • Eliminating the $81,040 investment expense deduction reported on Schedule A, Itemized Deductions, line 22, as a flowthrough deduction from rjt’s Schedule K-l; and • Eliminating the reported loss on liquidation of RJT reported on petitioners’ 2001 Schedule D, Capital Gains and Losses, line 1. Partnerships don’t pay income tax; partners do. This means that there has to be another step after a partnership case is over before the Commissioner can figure out an individual partner’s tax bill. The Code calls this a “computational adjustment,” which is just the bottom-line “change in the tax liability of a partner which properly reflects the treatment * * * of a partnership item.” Sec. 6231(a)(6). To make computational adjustments, however, the IRS must follow certain procedures: Sometimes the IRS has to send each partner a notice of deficiency, sometimes the IRS can just directly assess each partner and send him a notice of computational adjustment, and sometimes the IRS has to do some combination of both. See sec. 6230(a); sec. 301.6231(a)(6)-l(a), Proced. & Admin. Regs.; see also Napoliello v. Commissioner, 655 F.3d 1060, 1063-1064 (9th Cir. 2011) (citing Olson v. United States, 172 F.3d 1311, 1317 (Fed. Cir. 1999)), affg. T.C. Memo. 2009-104. Figuring out which adjustments fall into which baskets has proven to be a major legal problem. The Code’s test is easy to state: When a computational adjustment is attributable to an affected item[2] that requires a determination at the partner level, the Commissioner has to send the partner a notice of deficiency, which gives him a chance to come to Tax Court before paying. See sec. 6230(a)(2)(A)(i). The regulation uses more words, but says the same thing: “[If] a change in a partner’s tax liability cannot be made without making one or more partner-level determinations, that portion of the change in tax liability attributable to the partner-level determinations shall be made under the deficiency procedures”. Sec. 301.6231(a)(6)-l(a)(l), Proced. & Admin. Regs. The Code and regulations also have a rule that when a partnership-level determination leads to a computational adjustment that does not require a partner-level determination, the Commissioner is to assess the increase in tax summarily, send the partner a notice of computational adjustment, and leave him to pay and sue for a refund: No ticket to Tax Court for him. See sec. 6230(a)(1); sec. 301.6231(a)(6)-l(a)(2), Proced. & Admin. Regs. This makes a blurry line — between “items which require partner level determinations” and items which do not — a blurry line with jurisdictional consequences.[3] It’s usually not a good idea to make jurisdiction this confusing, and courts have had to make do with what they can to try to make this cranny of the Code as clean as possible. And that leads to this case. The majority concludes that all of the computational adjustments made in the notice of deficiency that the Commissioner sent to the Thompsons “follow directly from the treatment of partnership items determined in the partnership-level proceeding, and none of them requires any partner-level determinations within the meaning of section 6230(a)(2) and section 301.6231(a)(6)-1(a)(2), Proced. & Admin. Regs.” I disagree. Remember the list of the four changes the Commissioner wanted to make to the Thompsons’ tax bill after RJT Investments was over: • Eliminating the $206 of dividend income from RJT’s Schedule K-l; • Eliminating the $12,415 capital loss from rjt’s Schedule K-i; • Eliminating the $81,040 investment expense deduction from rjt’s Schedule K-l; and • Eliminating the reported loss on liquidation of RJT from the Thompson’s Schedule D. The fourth item stands out — why’s the Commissioner eliminating an item from the individual partner’s tax return when that item doesn’t appear on the partnership’s own return? A. The majority says that we can go ahead and eliminate it anyway because we’ve decided in RJT Investments that the partnership was a sham, and no one can take a loss in disposing of an interest in a sham partnership.[4] I don’t disagree. But it doesn’t quite answer the jurisdictional question that we have — does a taxpayer get to come to our Court to learn this lesson, or does he have to go to a refund court to hear the same bad news? Finding the correct (or at least a better) answer, I think, begins with a look at what it was exactly that the Commissioner did after RJT Investments was over. In RJT Investments we held that the Thompsons’ outside basis was a partnership item and determined it to be zero,[5] so the Commissioner made a conforming change to the Thompsons’ return. He issued them a notice of deficiency in which he adjusted their outside basis in RJT to zero. This certainly made the treatment of outside basis at the partner level consistent with its treatment at the partnership level.[6] This particular adjustment doesn’t involve any partner-level determinations — section 301.6231(a)(6) — 1(a)(2), Proced. & Admin. Regs., tells us that “substituting redetermined partnership items for the partner’s previously reported partnership items * * * does not constitute a partner-level determination.” The problem is that merely zeroing out the Thompsons’ outside basis doesn’t get the Thompsons their correct tax liability. That’s why the Commissioner’s computational adjustment was off — he skipped a partner-level step. The notice of deficiency zeroed out the Thompsons’ outside basis by substituting zero for the more than $22 million basis that they had reported, and then increasing their taxable income by $22,006,759 of “Short-Term Capital Gain/Loss.” Although the $22,006,759 amount does appear on the Thompsons’ return, that was not the amount of the loss that they reported for the disposition of their interest in RJT: Description of property Date acquired/ date sold Sale price Cost or other basis Gain or (loss) Liquidation of RJT Investments X, LLC 10/12/01 12/21/01 $986,759 $22,006,759 ($21,020,000) Stipulation of Facts, Exhibit 2-J. As one can see from this exhibit, their claimed loss was $21,020,000. This means that the Commissioner ended up converting the Thompsons’ fictional loss into a fictional $986,759 gain. It’s not that the Commissioner had the correct mathematical formula and just made a math error. As we explained in Huffman v. Commissioner, 126 T.C. 322, 344-345 (2006), affd. 518 F.3d 357 (6th Cir. 2008), there is a distinction between a “mathematical error” and omitting a step that requires math. Mathematical or clerical errors generally include typographical mistakes, or errors in addition, subtraction, multiplication, or division. See sec. 6213(g)(2). If the computational adjustment was incorrect only because the Commissioner made a mathematical or clerical error while applying the correct mathematical formula, then I would agree that it wouldn’t require any partner-level determinations within the meaning of section 6230(a)(2)(A)(i).[7] But in this case, the Commissioner also needed to make another adjustment — either reducing the Thompsons’ reported sale price for rjt from $986,759 to zero, or reducing their reported short-term capital gains to zero, or both. Neither the sale price (which, I acknowledge, was nothing more than the return of most of the cash that the Thompsons put into the deal) nor the short-term loss is anywhere to be found on RJT’s return. This becomes a bigger problem after the Courts of Appeals’ decisions in Jade Trading and Petaluma, with their holdings that outside basis isn’t even a partnership item. See Jade Trading, LLC v. United States, 598 F.3d 1372 (Fed. Cir. 2010), affg. in part, revg. in part, vacating in part and remanding in part 80 Fed. Cl. 11 (2007); Petaluma FX Partners, LLC v. Commissioner, 591 F.3d 649 (D.C. Cir. 2010), affg. in part, revg. in part, vacating in part and remanding in part 131 T.C. 84 (2008). Without the benefit of collateral estoppel, would we be able to hold that the disallowance of a loss like this one can be made without a partner-level determination, when outside basis, the sale price, and the resulting loss are nowhere on the partnership’s return? B. The problem springs from an ambiguity in the phrase “affected items which require partner level determinations.” The Code doesn’t define “determinations” or “requires”, and the majority doesn’t try to do it either. But a minute’s reflection suggests that there are at least two plausible readings of the phrase. The first is one that construes the phrase to read “affected items which require legal or factual partner-level determinations.” If this reading is the better one, then deficiency procedures apply to a computational adjustment that requires any question of fact or law to be decided at the partner level before the Commissioner can make the computational adjustment. A second reading is one that construes the phrase to read “affected items which, on the facts of this particular case, require partner-level factual determinations.” The majority adopts the second reading, but without discussing any alternative. [8] One problem with this reading is that determinations aren’t just factual — it’s well settled that determinations can be legal, factual, or some combination of both.[9] Section 301.6231(a)(3)-l(b), Proced. & Admin. Regs., also contemplates this when it explains that a “‘partnership item’ includes * * * legal and factual determinations that underlie the determination of the amount, timing, and characterization of items of income, credit, gain, loss, deduction, etc.” The term “determination” refers to deciding something’s nature or outcome. See Terminal Wine Co. v. Commissioner, 1 B.T.A. 697, 701 (1925) (stating that a determination is “the final decision by which the controversy as to the deficiency is settled and terminated, and by which a final conclusion is reached relative thereto and the extent and measure of the deficiency defined”).[10] “By its very definition and etymology the word * * * irresistibly connotes consideration, resolution, conclusion, and judgment.” Scar v. Commissioner, 814 F.2d 1363, 1368 (9th Cir. 1987) (citing Terminal Wine Co., 1 B.T.A. at 701). I can’t say that the majority’s reading is without support in our caselaw. It comes from our decision in N.C.F. Energy Partners and cases that apply its holding. See N.C.F. Energy Partners v. Commissioner, 89 T.C. 741 (1987), superseded by statute on other grounds;[11] see also Callaway v. Commissioner, 231 F.3d 106, 110 (2d Cir. 2000), revg. T.C. Memo. 1998-99; Adkison v. Commissioner, 129 T.C. 97, 102 (2007), affd. 592 F.3d 1050 (9th Cir. 2010); Crowell v. Commissioner, 102 T.C. 683, 689 (1994); Carmel v. Commissioner, 98 T.C. 265, 268 (1992); Woody v. Commissioner, 95 T.C. 193, 202 (1990); Dial, USA, Inc. v. Commissioner, 95 T.C. 1, 6 (1990). In N.C.F. Energy Partners we noted the distinction between affected items requiring only a computational adjustment that can be directly assessed and those subject to subsequent deficiency proceedings. 89 T.C. at 743-744. Although we said that affected items are subject to deficiency procedures if they require factual determinations at the partner level, we did not use “factual” in any way that implied that we were saying that affected items are not subject to deficiency procedures if they require “legal” determinations at the partner level. See id. at 744.[12] Look again at what the majority is doing in its opinion— it is making a legal determination that the Thompsons may not claim any loss at the partner level from the liquidation of their partnership interest because we held in RJT Investments that the partnership was an economic sham.[13] This is a legal determination because it resolves a question of law— namely, whether anyone in the Thompsons’ situation is entitled to claim such a loss. See McCarthy Trust v. Commissioner, 817 F.2d 558, 559 (9th Cir. 1987) (stating that when the parties do not dispute the substance of the transaction, “Application of the Internal Revenue Code * * * is a question of law”), affg. 86 T.C. 781 (1986). But it’s a legal determination that the majority’s making at the partner level without even realizing it[14] — after all, in RJT Investments, we didn’t and couldn’t redetermine the Thompsons’ reported loss from the liquidation of their interest in RJT at the partnership level because it wasn’t a partnership item[15] or a penalty that related to an adjustment to a partnership item. See sec. 6226(f) (laying out our partnership-level jurisdiction). The Thompsons’ loss is an affected item that must be determined (i.e., allowed or disallowed) at the partner level. See Petaluma FX Partners, LLC v. Commissioner, 591 F.3d at 655. The determination in RJT Investments that RJT is a sham is certainly the determination of a “partnership item,” but the effect this has on the Thompsons’ claimed capital loss from the disposition of their interest in RJT is nevertheless one step removed from the partnership level. It seems such an easy step to take, but the conclusion that the Thompsons can’t claim a loss on disposition of RJT is a low-hanging fruit that we shouldn’t be touching at the partnership level: It’s an affected item that requires a determination at the partner level (no matter how obvious or easy it seems) before the Commissioner can pluck, peel, and eat it. The sham determination only indirectly affects the loss reported by the Thompsons for the liquidation of their interest in RJT, and doesn’t just flow through to the partners’ returns as a numerical adjustment. This is consistent with our holding in Petaluma on remand. 135 T.C. 581, 587 (2010). In that Opinion, we held that a sham determination only indirectly affects outside basis at the partner level. Id. We also held that the sham determination didn’t flow through to the partners’ returns as a numerical computational adjustment. Id. Plus, the Thompsons’ loss from the liquidation of their interest doesn’t look like the kind of affected item the regulations say can be adjusted without any partner-level determinations. Section 301.6231(a)(6) — 1(a)(2), Proced. & Admin. Regs., says: Changes in a partner’s tax liability with respect to affected items that do not require partner-level determinations (such as the threshold amount of medical deductions under section 213 that changes as the result of determinations made at the partnership level) are computational adjustments that are directly assessed. This regulation tells us that exemptions, credits, and deductions that have percentage limitations based on the taxpayer’s adjusted gross income are types of affected items that don’t require partner-level determinations — it’s something anyone with a calculator can do as a math chore without the need for any fact finding or even simple legal analysis at the partner level. I also think that it’s important to consider, when thinking about whether a computational adjustment requires partner-level determinations, whether a partner had the opportunity at the partnership level to dispute all issues of law and fact that will affect the computational adjustment. See Randell v. United States, 64 F.3d 101, 108 (2d Cir. 1995). Otherwise we may see cases like the Thompsons’ again in a collection due process proceeding.[16] See Manko v. Commissioner, 126 T.C. 195 (2006). C. It’s true, as the majority points out in note 5, that the Ninth Circuit didn’t “reach the question of whether the notice of deficiency would be invalid if no partner-level [factual] determination[s] were necessary.” Napoliello, 655 F.3d at 1064 n.1. But the Ninth Circuit also noted that such a “proposition would deprive taxpayers of procedural safeguards were we to adopt it.” Id. I fear that the majority’s construction of “determinations” won’t work well and will lead to results contrary to tefra’s purpose. This case shows us how that might happen — the majority’s approach deprives the Thompsons of a prepayment forum to challenge the Commissioner’s disallowance of the loss. Maybe that doesn’t make a lot of difference in this case — it’s hard to see how the Thompsons would care about whether we have jurisdiction because (if we did have jurisdiction) we’d exercise it to disallow their loss and find them collaterally estopped from disputing the penalty at issue. But taking a case to conference usually means that we think it should be analyzed for its effects on tax law more generally. Our holding today, I suggest, means that in future cases we will need to conduct a case-by-case analysis as to whether a particular taxpayer’s reported loss on the liquidation of his partnership interest could be adjusted in a notice of computational adjustment or only in a notice of deficiency. This kind of individualized case processing would, I fear, defeat a major purpose of tefra. Congress has always made it clear that “[partnership proceedings under rules enacted in tefra, must be kept separate [and distinct] from deficiency proceedings involving the partners in their individual capacities.” H. Conf. Rept. 105-220, at 677 (1997), 1997-4 C.B. (Vol. 2) 1471, 2147; see also Maxwell v. Commissioner, 87 T.C. 783, 788, 793 (1986). This is not only clear from the legislative history, but also from the Code itself. Secs. 6221, 6226(f), 6230, 6231. Congress tried to draw a thick line between partnership-tax matters and all other tax items of the partners — presumably for administrative efficiency. See Maxwell, 87 T.C. at 793. A case-by-case patrolling of the border between affected items that do and don’t require partner-level factual determinations only increases the probability that the IRS’s bulk-processing employees will make what we will later call a mistake. What happened after Petaluma illustrates this problem: The IRS released Chief Counsel Notice CC-2009-11 on March 11, 2009, because it was uncertain as to how a reviewing court would classify particular items. The notice instructs the IRS to issue both a notice of deficiency and a notice of computational adjustment for the same items and amounts. Our decision today only complicates matters. Not wanting to blow the statute of limitations, the Commissioner will protect the Treasury by doubling the notices in every case and forcing the courts to decide each one. This is a necessary consequence of blurring general distinctions to be more precise in individual cases. It’s not a development we should encourage. The majority’s construction of affected items subject to deficiency proceedings as only those requiring partner-level factual determinations also threatens to cause inconsistent treatment between partners. When we require each partner to litigate the issue of whether computational adjustments require partner-level factual determinations, we risk treating partners of the same partnership differently even in our Court. (And refund courts may also disagree with our characterization of computational adjustments that can be directly assessed.) A computational adjustment relating to a loss reported by a partner on the liquidation of his interest is just the type of item that should be routed through deficiency procedures because it may require partner-level factual determinations, and will always require a partner-level legal determination. In similar cases there might be factual questions raised by the Commissioner’s treatment of, for example, the other components that a partner considered in computing his claimed loss (e.g., the cash or property he received from the disregarded partnership). And in all such cases the computational adjustment for the loss will require a partner-level legal determination on the effects of the partnership-level proceeding. An individual partner’s loss on disposition of his partnership interest cannot be determined at the partnership level. We therefore should assert jurisdiction at the partner level, because correctly redetermining the loss will generally require us to answer questions of both law and fact. I believe this is a permissible construction of section 6230(a)(2), and one that we should have adopted. II. Conclusion The silt we stir today will cloud the cases we plunge into tomorrow. I respectfully dissent. Kroupa, J., agrees with this dissent. Although the Eighth Circuit affirmed our decision, it nowhere discussed whether we were right to hold that outside basis is a partnership item. See RJT Invs. X v. Commissioner, 491 F.3d 732 (8th Cir. 2007). The Eighth Circuit stated plainly that the only issues it was deciding were whether we had properly found RJT to be a sham and whether that determination should be made at the partnership level. Id. at 735. Affected items aren’t partnership items but are affected by partnership items. See sec. 6231(a)(5). The matter is profoundly ambiguous, and the Secretary should not view our Opinion as foreclosing the possibility that he could clear this area up much more efficiently through regulation than the Commissioner has been able to do through litigation. As we pointed out in Tigers Eye Trading, LLC v. Commissioner, T.C. Memo. 2009-121, he may be en route to doing so. See Notice of Proposed Rulemaking, 74 Fed. Reg. 7205 (Feb. 13, 2009) (proposing section 301.6231(c)-9, Proposed Proced. & Admin. Regs., which would allow the Commissioner, upon notice, to convert all partnership items of an abusive tax shelter partnership to nonpartnership items, thereby routing partner- and partnership-level disputes through a single deficiency proceeding). Or to put it in more sophisticated language, the consequence of determining a partnership to be a sham is to say that the rules of subchapter K don’t apply. This means we disregard the partnership as an entity separate from its partners, and treat the assets of the disregarded partnership as if they were owned directly by the purported partners. Since the Eighth Circuit’s decision in RJT Investments, the D.C. and Federal Circuits have held that there’s no jurisdiction at the partnership level to determine a partner’s outside basis in a partnership because it’s an affected item, not a partnership item. See Jade Trading, LLC v. United States, 598 F.3d 1372 (Fed. Cir. 2010), affg. in part, revg. in part, vacating in part and remanding in part 80 Fed. Cl. 11 (2007); Petaluma FX Partners, LLC v. Commissioner, 591 F.3d 649 (D.C. Cir. 2010), affg. in part, revg. in part, vacating in part and remanding in part 131 T.C. 84 (2008). Although I do not believe — certainly after two circuits have both ruled the same way — that we had jurisdiction over outside basis at the partnership level, the Thompsons are collaterally estopped from attacking our contrary decision in their case. See Bush v. United States, 655 F.3d 1323 (Fed. Cir. 2011) (holding that when the IRS simply has to perform mathematical calculations — i.e., plug numbers into a formula — to determine a partner’s tax liability, it is a computational adjustment that does not require further determinations at the partner level); Gosnell v. United States, 107 AFTR 2d 2011-2748, 2011-2 USTC par. 50,488 (D. Ariz. 2011) (finding that no partner-level determination was needed because the substitution of a forty-percent penalty and disallowance of out-of-pocket costs required only mathematical calculations). Words in a statute generally must be interpreted according to their ordinary, everyday meaning. See, e.g., Commissioner v. Soliman, 506 U.S. 168, 174 (1993). We should only adopt a “restricted rather than a literal or usual meaning of its words where acceptance of that meaning would * * * thwart the obvious purpose of the statute.” Commissioner v. Brown, 380 U.S. 563, 571 (1965). As I illustrate infra part I.C., the majority's limited construction of the word “determinations” in fact thwarts the obvious purpose of TEFRA. See, e.g., Smith v. Massachusetts, 543 U.S. 462, 468 (2005) (noting a distinction between “legal rather than factual determination[s]” with regard to certain criminal procedural safeguards); Fid. Intl. Currency Advisor A Fund v. United States, 661 F.3d 667 (1st Cir. 2011) (noting that the trial court made various factual and legal determinations with regard to disallowed digital option transactions); Napoliello v. Commissioner, 655 F.3d 1060, 1065 (9th Cir. 2011) (rejecting petitioner’s contention that section 301.6231(a)(3) — 1(b), Proced. & Admin Regs., encompasses only accounting items and the factual and legal determinations underpinning the same), affg. T.C. Memo. 2009-104. See also Rule 155(a) (‘Where the Court has filed or stated its opinion determining the issues in a case, it may withhold entry of its decision for the purpose of permitting the parties to submit computations pursuant to the Court’s determination of the issues showing the correct amount to be included in the decision.”). Before the 1997 amendments, TEFRA provided for the determination of all penalties at the partner level. See N.C.F. Energy Partners v. Commissioner, 89 T.C. 741, 744-745 (1987). This is because penalties imposed on a partner because of an adjustment to a partnership item are “affected items.” But amendments to TEFRA in 1997 changed this structure and provided for the determination of some penalties at the partnership level. The example we gave in N.C.F. Energy Partners of an affected item requiring deficiency procedures — the addition to tax for negligence pursuant to section 6662(b)(1) (former section 6653(a)) — is itself one that requires both factual findings and also a legal determination that (i) the facts are sufficient to establish negligent disregard for tax rules and regulations and (ii) that no exception or excuse applies. 89 T.C. at 744-745. By way of analogy: Where a taxpayer has previously been convicted of a crime involving tax fraud, such as criminal tax evasion under section 7201, he is collaterally estopped from denying the existence of fraud with regard to any civil penalties the Commissioner asserts under section 6663. See, e.g., DiLeo v. Commissioner, 96 T.C. 858, 885 (1991), affd. 959 F.2d 16 (2d Cir. 1992). We don’t lose jurisdiction despite the lack of triable factual issues with regard to imposing the fraud penalty, but rather find for the Commissioner based upon collateral estoppel, making a legal determination that the civil fraud penalty applies. See, e.g., Williams v. Commissioner, T.C. Memo. 2009-81; Anderson v. Commissioner, T.C. Memo. 2009-44. In note 18, the majority concludes: “[E]ven if we assume that applying sec. 165(c)(2) to deny a loss on liquidating a partnership interest is an ‘affected item’ to be determined in a partner-level proceeding, such a determination requires no further partner-level facts once the partnership activities have been deemed to lack economic substance.” Majority op. note 18 (emphasis added). Section 6231(a)(3) defines “partnership item” as “[(A)] any item required to be taken into account for the partnership’s taxable year under any provision of subtitle A[, (B)] to the extent regulations prescribed by the Secretary provide that, for purposes of this subtitle, [(C)] such item is more appropriately determined at the partnership level than at the partner level.” Partnership items include factors that affect the determination of partnership items such as the “legal and factual determinations that underlie the determination of the amount, timing, and characterization of items of income, credit, gain, loss, deduction, etc.” Sec. 301.6231(a)(3) — 1(b), Proced. & Admin. Regs. Once the Commissioner assesses a tax, he is allowed to collect any unpaid portion of it by filing liens against, and levying on, a taxpayer’s property. The Code allows taxpayers a collection due process hearing before the IRS can use a lien or levy to collect the unpaid taxes. See secs. 6320, 6330. We have jurisdiction to review the Commissioner’s determinations after such hearings. Our review of the Commissioner’s determinations in cases like the Thompsons’ would be de novo, inasmuch as the partner never received a notice of deficiency or had the opportunity to dispute his underlying tax liability. See Grunsted v. Commissioner, 136 T.C. 455, 458 n.4 (2011); Prince v. Commissioner, 133 T.C. 270, 274 (2009); Lindberg v. Commissioner, T.C. Memo. 2010-67.