Filed 9/20/21  P. v. Fenwick CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

|  |  |
|---|---|
| THE PEOPLE,<br><br> Plaintiff and Respondent,<br><br>v.<br><br>JASON LAMONT FENWICK,<br><br> Defendant and Appellant. | 2d Crim. No. B304002<br>(Super. Ct. No. 18F-10662)<br>(San Luis Obispo County) |

Jason Lamont Fenwick appeals from the judgment after a jury convicted him of assault with the intent to commit a sex crime (Pen. Code,[1] § 220, subd. (a)(1)), oral copulation of an intoxicated person (§ 288a, subd. (i)), sexual penetration of an intoxicated person (§ 289, subd. (e)), and invasion of privacy (§ 647, subd. (j)(2)).  The trial court sentenced him to 10 years in state prison for his crimes.  It also ordered him to pay a $7,200 restitution fine (§ 1202.4, subd. (b)).

---

[1] Unlabeled statutory references are to the Penal Code.

Fenwick contends: (1) the judgment should be reversed due to the erroneous exclusion of evidence, (2) there was insufficient evidence to support his invasion-of-privacy conviction, (3) counsel provided ineffective assistance when he failed to object to the trial court's erroneous instruction on the invasion-of-privacy charge, and (4) the court erred when it found he had the ability to pay the restitution fine. We affirm.

FACTUAL AND PROCEDURAL HISTORY

*Fenwick sexually assaults Jane Doe*

Jane Doe was a passenger in a car driven by her boyfriend. Police stopped the car and cited him for driving under the influence. Jane was also intoxicated and could not drive. An officer at the scene ordered her a Lyft to take her home.

Fenwick, a driver for Lyft, arrived a few minutes later. He drove Jane Doe home. Jane could not walk on her own, so Fenwick helped her out of the car and to the back of the house where the sliding glass door to her bedroom was unlocked. Jane does not remember entering her bedroom or anything else about interacting with Fenwick that night.

Jane Doe awoke the next morning with vomit in her mouth, feces in her bed, and blood on the wall. Her abdomen and lower extremities were sore. She felt a burning sensation when she urinated and "excruciating" pain when she defecated. She felt that something sexual had occurred the night before.

Later that day, Jane Doe's boyfriend reviewed surveillance video footage from the night before.[2] The video showed Fenwick holding Jane's arm as the two walked to her house. Jane entered her bedroom through a sliding glass door, followed by Fenwick. Fenwick closed the blinds and helped Jane

---

[2] The video was played for the jury at trial.

2

remove her shoes. He then started to leave, but Jane grabbed his hand. She passed out a few minutes later. Fenwick briefly left the house, returning with a cell phone to photograph Jane. He then removed her shorts and underwear and performed sexual acts on her.

Police interviewed Fenwick about the incident.[3] He initially said that nothing sexual had occurred and that he simply stayed with Jane Doe until she fell asleep. He also claimed that he was sick and may have coughed on Jane's vagina when he helped her up after she fell off a toilet.

After police accused him of lying, Fenwick changed his story and said that Jane Doe was "all over" him. Although he protested, she undressed, kissed him, forced him to touch her breasts, and rubbed her vagina in his face. "That's what she wanted . . . she wanted me to, you know, stay with her."

*Jane Doe's statements to a victim-witness advocate*

Prior to opening statements, the prosecutor disclosed that Jane Doe had asked a victim-witness advocate whether he (the prosecutor) was "available." Jane also told the advocate that she found the prosecutor "attractive." Fenwick sought to have Jane's statements admitted at trial on the theory that they contradicted claims she made to the advocate: that she "flinches when men touch her," has "no desire for men," and is "terrified" of them. He also theorized that Jane was attempting to bolster a civil suit she had filed against Lyft.

The trial court concluded that the admission of Jane Doe's statements was prohibited by the rape shield law because they would be used to prove that she consented to Fenwick's

---

[3] A recording of the interview was played for the jury at trial.

3

sexual acts.  The evidence was also more prejudicial than probative.

Fenwick later reiterated his belief that the rape shield law did not apply to Jane Doe's statements because they did not amount to "past sexual conduct."  He also claimed the statements were relevant because, "if she's in a relationship and . . . comes on to other men," that is "highly probative" of how she operates.  The trial court disagreed and excluded the evidence.

*Trial and sentencing*

At trial, Fenwick claimed that the sexual acts he performed on Jane Doe were consensual and that she was not inebriated to the degree alleged by the prosecution.  He rubbed his fingers on Jane's vagina, but said he did not have sexual intercourse with her because she was too "sleepy."

Fenwick admitted that he took photographs of Jane Doe without her consent.  He did not know if she knew that he was taking them.  He showed a picture of Jane's exposed breasts to a coworker.

The trial court instructed the jury that, to find that Fenwick invaded Jane Doe's privacy when he took the pictures, the prosecutor had to prove that:  (1) Fenwick "used a . . . camera . . . to secretly . . . photograph" Jane; (2) "the . . . photograph . . . was under or through the clothing being worn by [Jane] without [her] consent or knowledge"; (3) the photograph was "taken with the intent to arouse, appeal to, or gratify the lust, passions, or sexual desires of [Fenwick] and invade the privacy of [Jane]"; and (4) the photograph "was made under circumstances in which [Jane] had a reasonable expectation of privacy."  The court then defined "identifiable" and "intimate body part" for jurors.  It did

4

not define any other term. Counsel conceded that Fenwick was guilty of this crime during closing arguments.

Jurors convicted Fenwick of assault with the intent to commit a sex crime, oral copulation of an intoxicated person, sexual penetration of an intoxicated person, and invasion of privacy. At sentencing, the trial court said that it was going to impose a $7,200 restitution fine. Fenwick asked the court to reduce the fine, arguing that he would earn minimal wages in prison. The court recognized that Fenwick would earn low wages, but declined to reduce the fine.

## DISCUSSION

### *Exclusion of evidence*

Fenwick first contends the trial court erred when it excluded Jane Doe's statement that she was attracted to the prosecutor. We disagree.

In a case involving one or more specified sex offenses, evidence of an alleged victim's past sexual conduct is not admissible to prove consent. (*People v. Fontana* (2010) 49 Cal.4th 351, 354 (*Fontana*); see Evid. Code, § 1103, subd. (c)(1).) But such evidence may be admitted to "attack the credibility of the" victim if: (1) "its probative value outweighs the danger of undue prejudice" (see Evid. Code, § 352), and (2) "the defendant . . . complies with the procedures set forth in Evidence Code section 782." (*Fontana*, at p. 354.) We review the trial court's order excluding evidence pursuant to these provisions for abuse of discretion. (*People v. Gutierrez* (2009) 45 Cal.4th 789, 827.)

There was no abuse of discretion. Fenwick initially sought to introduce Jane Doe's statements about the prosecutor to contradict claims she made to the victim-witness advocate: that she "flinches when men touch her," has no desire for men,

5

and is terrified of them.  But the claims Jane made to the victim-witness advocate were not presented to the jury.  Jane's alleged interest in the prosecutor was therefore irrelevant.  (*People v. Freeman* (1994) 8 Cal.4th 450, 491 [evidence relevant only if it tends to prove or disprove an issue before the jury].)

Fenwick also sought to introduce Jane Doe's statements to show that she had manipulated the prosecutor's office to bolster the civil suit she filed against Lyft.  But this theory of admissibility rests on a string of assumptions, the first of which is that Jane was willing to engage in "sexual conduct" to gain her desired outcome.  (See *People v. Franklin* (1994) 25 Cal.App.4th 328, 334 (*Franklin*) ["sexual conduct" includes "any behavior that reflects the actor's or speaker's willingness to engage in sexual activity"].)  As such, it implicates the rape shield law and the narrow exception set forth in Evidence Code section 782.  But as he admits in his opening brief, Fenwick did not comply with the procedural requirements of that section because he failed to submit a written motion and offer of proof on the relevancy of Jane's statements.  (Evid. Code, § 782, subd. (a)(1).)  Additionally, courts construe Evidence Code section 782's exception to the rape shield law "'narrowly'" so that it does not become a "''back door" for admitting otherwise inadmissible evidence.' [Citation.]" (*Fontana*, *supra*, 49 Cal.4th at pp. 362-363.)  Fenwick's "'sketchy and unconfirmed allegations'" regarding Jane's manipulation of the prosecutor do not fit within such a narrow construction.  (*People v. Mestas* (2013) 217 Cal.App.4th 1509, 1518.)

Finally, Fenwick claimed Jane Doe's statements were "highly probative" because they showed that she was willing to "come[] on to other men" while in a relationship with her

6

boyfriend. This theory of admissibility again implicates the rape shield law because it goes directly to whether Jane consented to engaging in sexual acts with Fenwick. (*Franklin*, *supra*, 25 Cal.App.4th at p. 334.) Evidence of an alleged victim's sexual conduct with a third party is not admissible to prove consent. (*Fontana*, *supra*, 49 Cal.4th at p. 354.) The trial court thus did not abuse its discretion when it denied Fenwick's motion to admit Jane's statements about the prosecutor. (*Id.* at p. 370.) Nor did that denial deprive Fenwick of his constitutional rights. (*Ibid.*)

### Sufficiency of the evidence

Section 647, subdivision (j)(2), prohibits the use of a "concealed" camera to secretly photograph another person "under or through" their clothing. (§ 647, subd. (j)(2).) Fenwick contends there was insufficient evidence that he violated this statute because: (1) the camera he used to photograph Jane Doe was not "concealed," and (2) he did not photograph Jane "under or through" her clothing. We disagree with both contentions.

To evaluate Fenwick's contentions, "'we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find [him] guilty beyond a reasonable doubt.'" (*People v. Avila* (2009) 46 Cal.4th 680, 701.) We draw all reasonable inferences in favor of the verdict, and presume the existence of every fact the jury could reasonably deduce from the evidence. (*People v. Maciel* (2013) 57 Cal.4th 482, 515.) It is immaterial whether we would have drawn the same inferences (*People v. Solomon* (2010) 49 Cal.4th 792, 811-812); our job is not to reweigh the evidence or reevaluate witness credibility (*People v. Jones* (1990) 51 Cal.3d 294, 314).

7

As to Fenwick's first contention, a camera is "concealed" if it is hidden from view, if something prevents the disclosure or recognition of it, or if it is placed or kept out of sight. (*In re R.C.* (2019) 39 Cal.App.5th 302, 307-308.) Here, Fenwick retrieved a cell phone from his car and then used it to take pictures of Jane while she was unconscious. Fenwick's act of waiting until Jane was unconscious to take pictures of her kept the phone out of Jane's sight. (See *id.* at p. 308 [camera "concealed" where minor did not obtain victim's permission to use it and kept it hidden from her sight].) Substantial evidence thus supports the jury's determination that Fenwick "concealed" his cell phone camera. (*Id.* at p. 309.)

Substantial evidence also supports the jury's determination that Fenwick photographed Jane Doe "under or through" her clothing. "Under" means "'in . . . a position below or beneath something'" (*Natural Resources Defense Council, Inc. v. Perry* (N.D.Cal. 2018) 302 F.Supp.3d 1094, 1097) or "'below or beneath so as to be covered, protected, or concealed'" (*RJT Investments X v. Commissioner* (8th Cir. 2007) 491 F.3d 732, 736, fn. 6, alterations omitted). Fenwick had photographs on his cell phone depicting Jane both clothed and with her breasts exposed. Because Jane's breasts were at one point covered by clothes and then uncovered and exposed, Fenwick photographed her "under or through" her clothing.

*Ineffective assistance of counsel*

Next, Fenwick contends trial counsel provided ineffective assistance because he conceded Fenwick's guilt on the invasion-of-privacy charge instead of objecting to the trial court's erroneous jury instruction. We again disagree.

8

To succeed on an ineffective assistance of counsel claim, a defendant must prove, by a preponderance of the evidence, that counsel's performance was deficient and resulted in prejudice. (*Strickland v. Washington* (1984) 466 U.S. 668, 687, 691-692; *People v. Ledesma* (1987) 43 Cal.3d 171, 217-218.) As to the first requirement, we "defer to counsel's reasonable tactical decisions" and indulge "a 'strong presumption that [their] conduct falls within the wide range of reasonable professional assistance.' [Citation.]" (*People v. Lucas* (1995) 12 Cal.4th 415, 436-437.) As to the second, a defendant establishes prejudice by showing "'a probability sufficient to undermine confidence in the outcome.' [Citations.]" (*People v. Cunningham* (2001) 25 Cal.4th 926, 1003.)

Here, the trial court's instruction on the invasion-of-privacy charge failed to tell jurors that they had to conclude that the camera Fenwick used to photograph Jane Doe was "concealed" in order to convict him. The instruction thus omitted an essential element of the charged crime. (See *In re R.C.*, *supra*, 39 Cal.App.5th at pp. 307-308.) But that omission was harmless beyond a reasonable doubt. (See *People v. Flood* (1998) 18 Cal.4th 470, 502-503 [instruction that omits element of crime reviewed under standard set forth in *Chapman v. California* (1967) 386 U.S. 18].)

The video footage shown to jurors depicted Fenwick waiting until Jane Doe passed out to retrieve his cell phone and use it to take pictures of her. Fenwick then admitted at trial that he took pictures of an unconscious Jane. These actions served to "conceal" the camera Fenwick used. Any error in failing to instruct jurors on concealment was therefore harmless. Counsel's failure to object to the erroneous instruction thus does not

9

undermine confidence in Fenwick's conviction.  His ineffective-assistance-of-counsel claim fails.

*Restitution fine*

Finally, Fenwick contends the trial court abused its discretion when it concluded that he had the ability to pay a $7,200 restitution fine.  (Cf. *People v. Nelson* (2011) 51 Cal.4th 198, 227 [ability-to-pay determination reviewed for abuse of discretion].)  But the record shows that Fenwick held two jobs when he sexually assaulted Jane Doe, and had the ability to afford rent, child support, and car payments.  (See, e.g., *People v. Gentry* (1994) 28 Cal.App.4th 1374, 1377-1378 [past and future earnings relevant to determining ability to pay].)  Fenwick will also have the ability to earn wages while in prison.  (See, e.g., *People v. Castellano* (2019) 33 Cal.App.5th 485, 490 [potential earnings in prison relevant to defendant's ability to pay].)  Fenwick provided no evidence to counter these considerations.  (*Ibid.* [defendant bears burden of showing inability to pay].)  He thus failed to show that the court below abused its discretion when it declined to reduce the restitution fine.

DISPOSITION

The judgment is affirmed.

<u>NOT TO BE PUBLISHED.</u>


TANGEMAN, J.


We concur:



GILBERT, P. J.        PERREN, J.


10

Matthew G. Guerrero, Judge

Superior Court County of San Luis Obispo

_____

  Matthew Alger, under appointment by the Court of Appeal, for Defendant and Appellant.

  Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Paul M. Roadarmel, Jr. and David F. Glassman, Deputy Attorneys General, for Plaintiff and Respondent.