**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MICHAEL E. NAPOLIELLO,

*Petitioner,*

v.

COMMISSIONER OF INTERNAL
REVENUE,

*Respondent.*

No. 09-72389

Tax Ct. No.
13983-06

OPINION

Appeal from a Decision of the
Tax Court of the United States

Argued and Submitted
May 4, 2011—Pasadena, California

Filed August 23, 2011

Before: John T. Noonan and Kim McLane Wardlaw, Circuit
Judges, and Edward R. Korman,, Senior District Judge.*

Opinion by Judge Noonan

---

*The Honorable Edward R. Korman, Senior District Judge for the U.S.
District Court for Eastern New York, Brooklyn, sitting by designation.

## COUNSEL

Edward Robbins, Hochman, Salkin, Rettig, Tocher & Perez, P.C., Beverly Hills, California, for the petitioner.

Joan Oppenheimer, Department of Justice, Washington, DC, for the respondent.

## OPINION

NOONAN, Circuit Judge:

Michael Napoliello appeals the United States Tax Court's decision in favor of the Commissioner of Internal Revenue. We have jurisdiction under 26 U.S.C. § 7482(a), and we affirm.

## FACTS

This case arises from the Internal Revenue Service's ("IRS") investigation of a tax shelter. The type of shelter is known as a "Son-of-BOSS" (being a variant of the Bond and Options Sales Strategy ("BOSS") shelter). Son-of-BOSS tax shelters involve a series of transactions connected to offsetting foreign currency options. *See generally Desmet v. Comm'r of Internal Revenue*, 581 F.3d 297, 299-300 (6th Cir. 2009). The shelters' purpose is "to generate artificial tax losses designed to offset income from other transactions." *Kornman & Assocs., Inc. v. United States*, 527 F.3d 443, 446 n.2 (5th Cir. 2008).

This particular Son-of-BOSS tax shelter worked as follows. On October 25, 2000, Napoliello established and became the sole member of MN Trading LLC ("MN Trading"). On behalf of MN Trading, Napoliello entered into two pairs of long and short foreign currency option contracts. Each long option had

a premium of $30 million and each short option had a premium of $29.25 million. On November 15, 2000, Napoliello exchanged his interest in MN Trading for an interest in a recently-formed partnership, AD FX Trading 2000 Fund LLC ("AD Trading"). Napoliello subsequently withdrew from AD Trading in exchange for shares of publicly-traded securities ("AD Trading securities") and $392,492 in cash. Napoliello then sold the securities on December 27, 2000 for $358,296. On his 2000 tax return, Napoliello reported $60,942,026 in losses from the sale.

Napoliello's claimed losses masked the offsetting effects of the foreign currency options. To arrive at the losses, Napoliello subtracted the sales value of the AD Trading securities from his "basis" (i.e., value for tax purposes) in those securities. Napoliello's basis, in turn, consisted of his claimed "outside basis" in AD Trading (i.e., interest in the partnership for tax purposes) at the time he withdrew less the cash he received. Because of his transferred interest from MN Trading to AD Trading, Napoliello's outside basis in AD Trading reflected the value of the foreign currency options. In calculating that value, Napoliello included the premiums paid to acquire the long options but did not offset those amounts by the premiums received on sale of the short options.

The IRS determined that AD Trading was a sham. On December 3, 2004, the IRS sent a notice of Final Partnership Administrative Adjustment ("FPAA") to AD Trading. The FPAA concluded, among other things, that AD Trading lacked economic substance and was formed only for purposes of tax avoidance. The FPAA also made adjustments to AD Trading's partnership tax return. These adjustments reduced to zero AD Trading's capital contributions, distributions of property other than money, distributions of money, and interest expense. None of the partners in AD Trading contested the determinations in the FPAA.

Following issuance of the FPAA, the IRS reviewed Napoliello's taxes. On April 28, 2006, the IRS sent Napoliello a

deficiency notice of $12,072,927 for tax year 2000. The notice recalculated Napoliello's basis in the AD Trading securities as $358,383 — instead of as nearly $61,300,322, as Napoliello initially claimed — by accounting for the offsetting short options.

## PROCEEDINGS

After receiving the deficiency notice, Napoliello brought this action in Tax Court. On summary judgment, Napoliello raised two issues, including a jurisdictional argument also made in this appeal. The Tax Court rejected both of Napoliello's arguments and granted the IRS's motion for summary judgment. The Tax Court also redetermined Napoliello's deficiency, making minor adjustments to the amount owed.

Napoliello appeals the Tax Court's decision.

## ANALYSIS

There are two issues on appeal. Both of these issues are jurisdictional. We review the Tax Court's jurisdiction de novo. *Abatti v. Comm'r of the Internal Revenue Serv.*, 859 F.2d 115, 117 (9th Cir. 1988).

[1] Napoliello asserts that the Tax Court lacks jurisdiction even though he, not the Commissioner, brought the action. The reason for this curious position is the structure of Tax Court litigation. *See generally* Leandra Lederman, *'Civil'izing Tax Procedure: Applying General Federal Learning to Statutory Notices of Deficiency,* 30 U.C. Davis L. Rev. 183, 204-14 (1996). The IRS ordinarily may assess, and then collect on, a tax deficiency only after issuing a deficiency notice to the taxpayer. *See* 26 U.S.C. § 6213(a). If the taxpayer contests the validity of the notice in Tax Court, as Napoliello did here, the challenge acts as a challenge to the court's jurisdiction. *See Scar v. Comm'r of Internal Revenue*, 814 F.2d 1363, 1366-67 (9th Cir. 1987) (no Tax Court jurisdiction when deficiency

notice is invalid). A determination that the Tax Court lacks jurisdiction because of an invalid notice strips the IRS of power to assess taxes based on that notice. *See generally id.* at 1370 ("Jurisdiction is at issue here. Failure to comply with statutory requirements renders the deficiency notice null and void and leaves nothing on which Tax Court jurisdiction can rest."). The determination typically also prevents the IRS from assessing the tax through other means, because in many cases — including this one — the statute of limitations for doing so has expired by the time the determination is made. *See* 26 U.S.C. § 6503(a)(1) (ordinarily suspending running of the statute of limitations during period in which IRS cannot make assessment); *Shockley v. Comm'r of Internal Revenue*, Nos. 28207-08, 28208-08, 28210-08, 2011 WL 1641884, at *8 (U.S. Tax Ct. May 2, 2011) ("An invalid notice of deficiency does not suspend the running of the period of limitations for assessment."). Thus when a taxpayer challenges a deficiency notice, the IRS's assessment of that deficiency often depends on the Tax Court's proper exercise of jurisdiction.

* * *

The first issue is whether the Tax Court had jurisdiction to redetermine Napoliello's deficiency based on the notice he received. The Tax Court's jurisdiction to redetermine a deficiency is based on, inter alia, the IRS's issuance of a valid notice to the taxpayer. *See* 26 U.S.C. § 6213(a).

**[2]** The Tax Equity and Fiscal Responsibility Act of 1982 ("TEFRA") establishes the process for assessing tax deficiencies against partners, including the issuance of a valid deficiency notice. *See* 26 U.S.C. §§ 6221-6234. Under TEFRA, the IRS first sends an FPAA to the partnership when the IRS changes the tax treatment of "partnership items" on the partnership's return. These partnership items are "any item required to be taken into account for the partnership's taxable year under any provision of subtitle A [of the Internal Reve-

nue Code] to the extent regulations prescribed by the Secretary provide that . . . such item is more appropriately determined at the partnership level than at the partner level." 26 U.S.C. § 6231(a)(3). The IRS then sends an "affected item" notice of deficiency to a partner if there are affected items — non-partnership items that are affected by partnership items — that require determinations at the partner level. *See* 26 U.S.C. § 6230(a)(2)(A)(i); 26 C.F.R. § 301.6231(a)(5)-1(a). If the affected items do not require a partner-level determination, or if only partnership items are involved, the IRS may make a direct computational adjustment based on the FPAA. *See* 26 U.S.C. § 6230(a)(1); *Olson v. United States*, 172 F.3d 1311, 1317 (Fed. Cir. 1999). Napoliello argues that the deficiency notice issued to him was invalid because the IRS should have made a direct computational adjustment instead.

**[3]** We hold that the IRS properly sent Napoliello an affected item notice of deficiency because the deficiency required a partner-level determination. In reaching this holding, we follow the Sixth Circuit's reasoning in *Desmet*, another case involving a son-of-BOSS tax shelter. *See* 581 F.3d 297. As in *Desmet*, a partner-level determination was necessary because "the identity of the property cannot be determined from the FPAA. Even if it could be determined . . . the IRS needed to determine 'the portion of the stock actually sold, the holding period for the stock, and the character of any gain or loss.' " *Id.* at 303 (quoting *Domulewicz v. Comm'r*, 129 T.C. 11, 20 (2007)). The FPAA did not conclusively resolve these factual issues because AD Trading did not sell the securities. Therefore, the IRS could not make a direct computational adjustment of Napoliello's deficiency based on the FPAA.

**[4]** Napoliello's arguments to the contrary lack merit. He cites several cases for the proposition that a notice of deficiency was unnecessary, and therefore invalid, in this context.[1]

---

[1]We do not reach the question of whether the notice of deficiency would be invalid if no partner-level determination were necessary. We note, how-

*See Olson*, 172 F.3d 1311; *Bob Hamric Chevrolet, Inc. v. United States*, 849 F. Supp. 500 (W.D. Tex. 1994); *Bush v. United States*, 78 Fed. Cl. 76 (2007). Those cases involve settlements in which the partners "had stipulated to the amount of tax credits improperly claimed *before* the IRS assessed their liability via computational adjustment." *Desmet*, 581 F.3d at 304. Therefore, the cases are inapposite. Similarly, *Gosnell v. United States* merely holds that the IRS was not required to issue a notice of deficiency in an instance in which the partner disclosed the tax benefits from the Son-of-BOSS transactions. No. CV-09-01399-PHX-NVW, 2011 WL 2559832, at *12-*13 (D. Ariz. June 28, 2011). Thus, no resolution of partner-level factual issues was required. *Id.* Here, by contrast, Napoliello did not disclose his Son-of-BOSS tax benefits, so partner-level determinations were necessary. The other case cited by Napoliello, *Estate of Quick v. Comm'r*, also does not support his argument. *See* 110 T.C. 172, 183, *supplemented by* 110 T.C. 440 (1998). *Estate of Quick* holds that the relevant affected item, unrelated to ones here, requires a notice of deficiency. *Id.* at 440-43.

* * *

**[5]** The second issue is whether the Tax Court had jurisdiction to redetermine affected items in a deficiency notice that relied on the FPAA determination that AD Trading was a sham. The Tax Court's jurisdiction to redetermine affected items in a deficiency notice is limited to those items that reflect FPAA adjustments of partnership items. *See* 26 U.S.C. § 6230(a)(2)(A)(i); 26 U.S.C. § 6231(a)(5); 26 U.S.C.

---

ever, that Napoliello's proposition would deprive taxpayers of procedural safeguards were we to adopt it. (The argument would benefit Napoliello, however, for statute of limitations reasons.) By issuing a notice of deficiency, the IRS permits a partner to dispute the amount owed before paying the tax. *Desmet*, 581 F.3d at 302; *see* 26 U.S.C.§ 6213(a). If the IRS assesses taxes through a direct computational adjustment, a partner's only recourse is to pay the tax and to file a refund suit. *See* 26 U.S.C. § 6230(c).

§ 6231(a)(3). Napoliello argues that the FPAA could not determine that AD Trading was a sham because such a determination does not fall within the statutory definition of a partnership item. As a result, according to Napoliello, any Tax Court redetermination based on the FPAA conclusion that AD Trading was a sham is beyond the Tax Court's jurisdiction.

**[6]** We join the D.C. and Eighth Circuits in holding that a determination as to a partnership's validity, such as the determination that AD Trading was a sham, falls within the definition of a partnership item. *See Petaluma FX Partners, LLC v. Comm'r of Internal Revenue*, 591 F.3d 649 (D.C. Cir. 2010); *RJT Invs. X v. Comm'r of Internal Revenue*, 491 F.3d 732 (8th Cir. 2007); *see also* 26 U.S.C. § 6231(a)(3) (partnership item defined). We reach this conclusion by breaking down the definition of partnership item into two parts.

**[7]** First, for an item to be a partnership item it must be taken into account for the partnership's taxable year under Subtitle A of the Internal Revenue Code. *See* 26 U.S.C. § 6231(a)(3). Subtitle A concerns income taxes. Items that must be taken into account under Subtitle A thus include partnership items affecting partners' personal income tax liability. *See generally RJT*, 491 F.3d at 735-36.

**[8]** We find that Napoliello had to consider the validity of AD Trading in calculating his income taxes, satisfying the first part of partnership item's definition. "When filling out individual tax returns, the very process of calculating an outside basis, reporting a sales price, and claiming a capital loss following a partnership liquidation presupposes that the partnership was valid." *Id.* at 736. Therefore, we, like the D.C. Circuit, "have little difficulty concluding that application of the income tax provisions of Subtitle A to the tax liability of a taxpayer who receives income from a purported partnership entails a determination of the validity of that partnership." *Petaluma*, 591 F.3d at 653; *see also RJT*, 491 F.3d at 736.

**[9]** Second, an item is a partnership item only if it is more appropriately determined at the partnership, rather than partner, level. *See* 26 U.S.C. § 6231(a)(3). Items more appropriately determined at the partnership level "include, among other things, the partnership's method of accounting, its inventory method, and even 'whether partnership activities have been engaged in with the intent to make a profit for purposes of § 183 [the section setting forth the for-profit test].' " *RJT*, 491 F.3d at 737 (citing 26 C.F.R. § 301.6231(a)(3)-1(b)).

**[10]** The determination of AD Trading's validity is more appropriately determined at the partnership level, in line with the second part of the definition of partnership item. A determination of the validity of a partnership affects the tax liability of all partners. "Logically, it makes perfect sense to determine whether a partnership is a sham at the partnership level. A partnership cannot be a sham with respect to one partner, but valid with respect to another." *Petaluma*, 591 F.3d at 654; *see also RJT*, 491 F.3d at 737-38.

**[11]** Because both parts of the definition are met, we conclude that a determination as to the validity of a partnership is itself a partnership item. Therefore, the Tax Court had jurisdiction to redetermine affected items based on the partnership item determination in the FPAA.

Napoliello advances several contrary arguments on this point, which we reject. Napoliello lacks authority for his proposition that partnership items solely comprise accounting entries and the legal and factual determinations underpinning them (income, deduction, etc.). We do not believe that the regulation is so limited. *RJT*, 491 F.3d at 737 ("The regulation does not limit its applicability to line items and technical accounting issues as [petitioners] suggest."); *see also* 26 C.F.R. § 301.6231(a)(3)-1(b). Also unavailing is Napoliello's argument that determinations in the "Explanation of Items" section of the FPAA do not have force. This argument lacks authority, and we decline to endorse it here.

* * *

For the reasons above, the judgment of the Tax Court is
AFFIRMED.