**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| ORGANIC CANNABIS FOUNDATION, LLC, DBA Organicann Health Center, *Petitioner-Appellant*, v. COMMISSIONER OF INTERNAL REVENUE, *Respondent-Appellee*. | No. 17-72874 Tax Ct. No. 10593-15 |
| NORTHERN CALIFORNIA SMALL BUSINESS ASSISTANTS, INC., *Petitioner-Appellant*, v. COMMISSIONER OF INTERNAL REVENUE, *Respondent-Appellee*. | No. 17-72877 Tax Ct. No. 10594-15 OPINION |

Appeals from Decisions of the
United States Tax Court

Argued and Submitted October 22, 2019
San Francisco, California

Filed June 18, 2020

Before:  Jay S. Bybee, N. Randy Smith, and
Daniel P. Collins, Circuit Judges.

Opinion by Judge Collins

**SUMMARY**[*]

**Tax**

The panel affirmed the Tax Court's dismissal, for lack of jurisdiction, of untimely petitions for redetermination of federal income tax deficiencies.

Taxpayers operate marijuana dispensaries. In response to notices of deficiencies from the Internal Revenue Service, taxpayers sought to file their petitions for redetermination by April 22, 2015, the last day to file such petitions under I.R.C. § 6213(a). Taxpayers' attorney used FedEx to send the petitions for filing in the Tax Court. The petitions were delivered to the Tax Court on the morning of April 23, 2015.

The panel first rejected the contention that the petitions were timely because the Tax Court was inaccessible on the filing deadline. The panel held that, for non-electronic filings, a clerk's office is "inaccessible" on the "last day" of a filing period only if the office cannot practicably be accessed for delivery of documents during a sufficient period of time up to and including the point at which "the clerk's

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

office is scheduled to close." The panel explained that here, taxpayers presented no evidence to show that the Tax Court Clerk's Office could not be accessed during the substantial remaining portion of the day after FedEx unsuccessfully attempted delivery of the petitions earlier in the day on April 22, 2015.

The panel next held that the petitions could not be deemed timely under the mailbox rule set forth in I.R.C. § 7502, because the particular FedEx service used here was not on the IRS's formal list of designated delivery services to which the mailbox rule applies.

The panel also held that because § 6213(a)'s time limits are jurisdictional, equitable exceptions such as equitable tolling and waiver do not apply.

Finally, the panel rejected Organic Cannabis Foundation's contention that its notice of deficiency was invalid because it was improperly addressed and that the error was not harmless, because the panel disagreed with the premise that the notice was misaddressed.

## COUNSEL

Matthew D. Carlson (argued) and Douglas L. Youmans, Wagner Kirkman Blaine Klomparens & Youmans, Mather, California, for Petitioners-Appellants.

Paul Andrew Allulis (argued), Francesca Ugolini, and Patrick J. Urda, Attorneys; Richard E. Zuckerman, Principal Deputy Assistant Attorney General; Tax Division, United States Department of Justice, Washington, D.C.; for Respondent-Appellee.

Carlton M. Smith, New York, New York; Professor T. Keith Fogg, Director, Federal Tax Clinic of the Legal Services Center of Harvard Law School, Jamaica Plain, Massachusetts; for Amicus Curiae Federal Tax Clinic of the Legal Services Center of Harvard Law School.

**OPINION**

COLLINS, Circuit Judge:

This unhappy case presents a cautionary tale about the need for lawyers to ensure that they have done exactly what is statutorily required to invoke a court's jurisdiction. The unusual Internal Revenue Code ("I.R.C.") provision at issue here allows taxpayers to benefit from a "mailbox" rule—*i.e.*, that a document will be deemed filed when dispatched—only if the taxpayer uses one of the *particular* delivery services that the Internal Revenue Service ("IRS") has specifically designated for that purpose in a published notice. In preparing two Tax Court petitions for filing, the attorneys here delegated the task of arranging delivery to a secretary who, unfortunately, selected an overnight delivery service that was *not* then on the published list (it was added two weeks later). The error would not have mattered if the petitions had nonetheless arrived the next day, but as it turned out, they were not received by the Tax Court until two days after being dropped off at a FedEx office in California. Because the Tax Court concluded that the petitions had not been timely received and that the mailbox rule did not apply, it dismissed the petitions for lack of jurisdiction. Finding no error, we affirm.

## I

These appeals involve a challenge to income-tax deficiencies issued against two corporations, owned and controlled by a woman named Dona Ruth Frank, that planned or operated four California medical marijuana dispensaries. Appellant Organic Cannabis Foundation, LLC ("Organic Cannabis") began operating a marijuana dispensary in Santa Rosa in 2006. Appellant Northern California Small Business Assistants, Inc. ("NCSBA") held a 99% ownership interest in the Oakland Cannabis Institute, LLC and in The Petting Zoo, LLC, which respectively opened marijuana dispensaries in 2008 in Oakland and San Diego.[1] NCSBA also had a comparable interest in Napa Organics, LLC, which was planning to open a dispensary in Napa in 2010. However, according to NCSBA's petition in the Tax Court, "the dispensary never opened at the designated location and Napa Organics ceased operations in 2011."

## A

On January 22, 2015, the IRS issued notices of deficiency to both Appellants for tax years 2010 and 2011. The notices stated that, by "operat[ing] a medical marijuana dispensary," Organic Cannabis and the three NCSBA-owned LLCs were subject to I.R.C. § 280E, "which disallows all deductions or credits paid or incurred during the taxable year(s) in c[a]rrying on a trade or business that

---

[1] NCSBA's petition actually states that both dispensaries operated in San Diego, but that appears to be an error.

consists [of] trafficking in controlled substance[s]."[2]  After making these disallowances, the IRS's notice to Organic Cannabis calculated that, for the two years in question, it owed total additional income taxes of $1,129,276.00 as well as penalties of $225,855.20.  Likewise, the notice to NCSBA stated that, by virtue of the disallowances applicable to the three LLCs, NCSBA's "share of income from the[se] flow-through entities" was increased, resulting in a total additional tax liability of $531,707.00 and penalties of $106,341.40.

The two IRS notices were separately sent by certified mail from the IRS's San Francisco office on January 22, 2015 for delivery to the same Post Office ("P.O.") Box in Santa Rosa (which was used by Dona Frank).[3]  According to the certified mail tracking records, the Organic Cannabis notice arrived at the Santa Rosa post office for pickup on January 24, and the NCSBA notice arrived on January 28. Both items were retrieved at the same time on February 3.

---

[2] Section 280E reads as follows:

> No deduction or credit shall be allowed for any amount paid or incurred during the taxable year in carrying on any trade or business if such trade or business (or the activities which comprise such trade or business) consists of trafficking in controlled substances (within the meaning of schedule I and II of the Controlled Substances Act) which is prohibited by Federal law or the law of any State in which such trade or business is conducted.

I.R.C. § 280E.

[3] As discussed below, Organic Cannabis claims that the IRS package to it did not properly identify the P.O. Box, but we reject this contention. *See infra* at 26–28.

Each notice stated on the cover page that the last day to file a petition for redetermination with the Tax Court was April 22, 2015.

**B**

Using the same law firm in Mather, California, a suburb of Sacramento, Organic Cannabis and NCSBA prepared their respective Tax Court petitions, in which they challenged both the applicability and the constitutionality of § 280E.

As the petitions were being finalized on the late afternoon of April 21—the day before they were due—one of the firm's attorneys asked a secretary to prepare a FedEx shipping envelope addressed for overnight delivery to the Tax Court in Washington, D.C.  After logging into her account on the FedEx website, the secretary entered the necessary addressing information and then reviewed the delivery options.  She selected the "FedEx 'First Overnight'" delivery option because, "given the attorneys' obvious concerns about meeting the filing deadlines, [she] felt [she] should select the delivery method that would guarantee the earliest possible delivery."  After preparing the appropriately labeled FedEx package, the secretary gave it to one of the attorneys and went home.  A paper receipt from the FedEx office in nearby Rancho Cordova states that the single package (which contained both Appellants' petitions) was dropped off at 8:04 P.M. Pacific time on April 21.

The original FedEx label prepared by the secretary stated that the shipping date was "21APR15" and that the package was to be delivered "WED – 22 APR 8:30A" by "FIRST OVERNIGHT."  At some point in processing the package, however, FedEx apparently prepared a new label that bears a notation indicating it was created on "04/22" and that

redesignates the package for delivery on "THU – 23 APR 8:30A" by "FIRST OVERNIGHT." This new label was affixed directly over the prior label, and the package arrived in that form at the Tax Court on the morning of April 23. The limited FedEx tracking information that was later available concerning the package no longer listed any of the details of the package's transit while being handled by FedEx; instead, it merely stated that the "Ship date" was "Wed 4/22/2015" and that the package was delivered at "7:35  am" on "4/23/2015 – Thursday."

On the morning of April 22 (the due date for the petitions), one of the attorneys asked the secretary who had prepared the FedEx package to check on its status. The secretary checked her email and saw that she had not received the usual automatic notice from FedEx confirming its delivery. She called the Tax Court Clerk's Office and "was told something to the effect that the package had not been received." She then called FedEx's customer service number and spoke with a representative to whom she provided the package's tracking number. As the secretary later described it, the FedEx representative responded that "the driver's delivery notes stated the driver had tried to deliver but could not because . . . he or she could not get to the door for some plausible reason like construction, or some sort of police action (perhaps the representative said the access was blocked off because of a safety threat)." The record does not indicate that the law firm took any further action that day. When the secretary arrived at the firm the next morning, April 23, she saw that she had an email in her inbox confirming that the package had been delivered that morning at 7:35 a.m. Eastern time.

## C

On July 29, 2016—more than 15 months after the petitions had been docketed in the Tax Court—the Commissioner filed motions to dismiss both petitions for lack of jurisdiction, arguing that they were received by the Tax Court one day beyond the 90-day time limit set forth in I.R.C. § 6213(a).  The Commissioner also argued that Appellants could not take advantage of the I.R.C. provision deeming documents to be filed when mailed or dispatched to a private courier. *See id*. § 7502(a), (f).  According to the Commissioner, that rule applied to a "delivery service provided by a trade or business" only if the *particular* service is first "designated by the [IRS]" for that purpose, *id*. § 7502(f)(2), and here, "FedEx First Overnight" was not designated as an approved private delivery service under § 7502(f)(2) until May 6, 2015.

Appellants opposed the respective motions to dismiss, arguing that the petitions should be deemed timely because (1) delivery had been attempted on April 22, but the Tax Court was inaccessible; and (2) Appellants' use of FedEx First Overnight should be deemed to satisfy § 7502(f) or to substantially comply with that subsection.  Organic Cannabis's opposition also argued that the deficiency notice mailed to it omitted the P.O. Box; that therefore the mailing should be deemed to be invalid; and that the 90-day limit should be calculated from Organic Cannabis's actual receipt of the notice on February 3, 2015.[4]  Relatedly, Organic

---

[4] NCSBA's opposition in the Tax Court also challenged the adequacy of its separate deficiency notice on the grounds that, in the IRS's log of the mailing, the handwritten description of the mailing address made what should have been a "2" in the P.O. Box look like a "7."  The Tax Court disagreed as to NCSBA's reading of the

Cannabis filed its own "motion to dismiss for lack of jurisdiction," arguing that, in the event that its petition was deemed untimely, the improperly addressed deficiency notice was invalid and no proceedings could be had based on it. *Cf. Napoliello v. Comm'r*, 655 F.3d 1060, 1063 (9th Cir. 2011) ("A determination that the Tax Court lacks jurisdiction because of an invalid notice strips the IRS of power to assess taxes based on that notice.").

On July 25, 2017, the Tax Court granted the Commissioner's motions to dismiss, concluding that the petitions were not filed within the 90-day time period established in I.R.C. § 6213(a) and that it therefore lacked jurisdiction. The court also denied Organic Cannabis's motion to dismiss, which had challenged the validity of the deficiency notice it received. Organic Cannabis and NCSBA timely filed separate notices of appeal in the Tax Court within 90 days of the Tax Court's decisions. *See* I.R.C. § 7483. We have jurisdiction under I.R.C. § 7482(a)(1), (b)(1)(B).

## II

In dismissing the petitions for lack of jurisdiction, the Tax Court here did not purport to make any findings of fact but instead took "the facts as pleaded in the petition[s] as true for purposes" of the motions. Reviewing de novo the Tax Court's dismissals, *Duggan v. Comm'r*, 879 F.3d 1029, 1031 (9th Cir. 2018), we conclude that the Tax Court correctly found the petitions to be untimely.

---

handwriting, but it also concluded that NCSBA's argument failed in any event. NCSBA does not challenge the validity of its deficiency notice in this court.

## A

Appellants first argue that their petitions were timely filed because the Tax Court was inaccessible on April 22, thereby extending the due date for filing to the next day. The Tax Court correctly rejected this argument.

Under Federal Rule of Civil Procedure 6(a)(3), if the relevant clerk's office is "inaccessible" on the "last day for filing," then "the time for filing is extended to the first accessible day that is not a Saturday, Sunday, or legal holiday." *See* Fed. R. Civ. P. 6(a)(3)(A). But the federal civil rules do not apply, of their own force, to proceedings in the Tax Court, *see* Fed. R. Civ. P. 1 (civil rules govern "civil actions and proceedings in the United States district courts"), and the Tax Court's Rules of Practice and Procedure do not contain any comparable provision. However, the Tax Court's rules provide that "[w]here in any instance there is no applicable rule of procedure, the Court . . . may prescribe the procedure, giving particular weight to the Federal Rules of Civil Procedure to the extent that they are suitably adaptable to govern the matter at hand," *see* Tax Ct. R. 1(b), and the Tax Court has invoked that rule in holding that Rule 6(a)(3)'s inaccessibility provision "is 'suitably adaptable' to specify the principle for computing time when [the Tax Court] Clerk's Office is inaccessible because of inclement weather, government closings, or other reasons." *Guralnik v. Comm'r*, 146 T.C. 230, 252 (2016) (en banc).[5] Rule 6(a)(3) therefore governs here, and Appellants'

---

[5] *Guralnik* also concluded that Rule 6(a)(3) is properly applied to the computation of statutory deadlines, "except to the extent the statute in question explicitly supplants" it. *See* 146 T.C. at 250; *see also Union Nat'l Bank v. Lamb*, 337 U.S. 38, 40–41 (1949). The provision at issue here, I.R.C. § 6213(a), contains no such contrary language.

Petitions would be timely if the Tax Court's Clerk's Office was "inaccessible" on April 22, 2015 within the meaning of that rule.

Rule 6 does not define what the term "inaccessible" means, and the omission was intentional. *See* Fed. R. Civ. P. 6(a)(3), advisory committee's note to 2009 amendment ("The rule does not attempt to define inaccessibility. Rather, the concept will continue to develop through caselaw."). We therefore look to its "ordinary meaning." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 388 (1993). "Inaccessible," of course, means "not accessible," as in "not capable of being reached, entered, or approached." *Inaccessible*, Webster's Third New International Dictionary (1961) ("Webster's Third"). The word, however, is not limited to situations in which, strictly speaking, a place is *impossible* to reach to conduct business, such as when the "Clerk's Office [is] officially closed." *Keyser v. Sacramento City Unified Sch. Dist.*, 265 F.3d 741, 747 (9th Cir. 2001). Because something is "accessible" if it is "capable of being reached or *easily* approached," *see Accessible*, Webster's Third (emphasis added); *see also Accessible*, American Heritage Dictionary (5th ed. 2018) ("Easily approached or entered"), we agree that a clerk's office that is technically open but that cannot be reached by a litigant "'as a practical matter without heroic measures,'" *Chao Lin v. U.S. Att'y Gen.*, 677 F.3d 1043, 1045 (11th Cir. 2012) (citation omitted), is "inaccessible." *See*, *e.g.*, *U.S. Leather, Inc. v. H&W P'ship*, 60 F.3d 222, 226 (5th Cir. 1995) (where "ice storm . . . temporarily knocks out an area's power and telephone service and makes travelling dangerous, difficult or impossible," clerk's office, even though open, was rendered "inaccessible to those in the area near the courthouse"), *abrogated on other grounds by Kontrick v. Ryan*, 540 U.S. 443 (2004). Even assuming *arguendo*, as did

the Tax Court, that a FedEx delivery person did unsuccessfully attempt delivery of the package on the morning of April 22, we agree that Appellants failed to show inaccessibility within the meaning of Rule 6(a)(3).

Taking the secretary's statement at face value, she was informed by FedEx at some point in the mid- to late-morning Pacific time that FedEx had attempted to deliver the package earlier that day, but was unsuccessful due to "some plausible reason like construction" or a "police action (perhaps the representative said the access was blocked off because of a safety threat)." But that says nothing about whether the Tax Court's Clerk's Office could have been reached *later*, during the remainder of the business day. As the Tax Court noted, the nature of the obstacle that FedEx claimed to have encountered was not one that, like "inclement weather, government closings, or other reasons," would be expected to make it impracticable to reach the clerk's office for the "entire day." Nor did Appellants suggest that the clerk's office was officially closed on April 22; indeed, the Tax Court took judicial notice that "the Court's Clerk's Office was open during its normal business hours" that day. A temporary obstacle that is encountered *earlier* in the day does not, without more, render the clerk's office "inaccessible" on "the last *day* for filing." Fed. R. Civ. P. 6(a)(3) (emphasis added). Rule 6(a)(4) states that, for filing by non-electronic means, "the last day ends . . . when the clerk's office is *scheduled to close*." Fed. R. Civ. P. 6(a)(4) (emphasis added). To render the clerk's office inaccessible for the "last day," therefore, an obstacle to access must exist for at least a significant portion of the *final* period of time preceding the point at which "the clerk's office is scheduled to close." *Id.* Appellants' evidence made no such showing that the Tax Court Clerk's Office remained inaccessible for the several hours that followed after FedEx's unsuccessful

attempt to deliver the package. *Cf. Justice v. Town of Cicero*, 682 F.3d 662, 664 (7th Cir. 2012) (suggesting, in dicta, that if a court's e-filing system crashed during the last hour of the day, the clerk's office would be "inaccessible" under Rule 6(a)(3)).

Our conclusion is strongly supported by the Eleventh Circuit's decision in *Chao Lin*, which adopted the same construction of Rule 6(a)(3) when confronted with a similar situation. In *Chao Lin*, on the day before the due date, the petitioners gave their petition for review of a Board of Immigration Appeals decision to FedEx for next-day delivery to the Eleventh Circuit's clerk's office. 677 F.3d at 1044. Due to "inclement weather" the next morning, the clerk's office delayed its opening until 10:30 A.M., and the FedEx delivery person apparently showed up before then and was therefore unable to deliver the package. *Id*. at 1044–45. Although the clerk's office thereafter was open from 10:30 A.M. until 5:00 P.M., FedEx did not attempt another delivery that day but instead delivered the package the next day. *Id*. The court concluded that, because the clerk's office was open for the *remainder* of the day, it was not impossible for petitioners or the general public to access the clerk's office that day and that office was therefore not "inaccessible." *Id*. at 1046. The court rejected the petitioners' argument that "they should not suffer for the delay by Federal Express," holding that any such delay did not establish *inaccessibility*, which is what the rule requires. *Id*.

We therefore hold that, for non-electronic filings (such as those at issue here), a clerk's office is "inaccessible" on the "last day" of a filing period only if the office cannot practicably be accessed for delivery of documents during a sufficient period of time up to and including the point at

which "the clerk's office is scheduled to close." Fed. R. Civ. P. 6(a)(3), (4)(B).   Because, as the Tax Court noted, Appellants presented no evidence to show that the clerk's office could not be accessed during the substantial remaining portion of the day *after* FedEx's unsuccessful earlier delivery attempt, the extension in Rule 6(a)(3) did not apply.

**B**

Appellants alternatively argue that their petitions should be deemed timely under the mailbox rule set forth in I.R.C. § 7502.  The Tax Court correctly rejected this argument as well.

Section 7502(a) of the I.R.C. states that, if any "document required to be filed . . . within a prescribed period . . . under authority of any provision of the internal revenue laws" is received by the relevant "agency, officer, or office" after that prescribed period "by United States mail," then "the date of the United States postmark stamped on the cover in which such . . . document  . . . is mailed shall be deemed to be the date of delivery."  I.R.C. § 7502(a)(1).  The statute further provides that, to be covered by this rule, the "postmark date" must "fall[] within the prescribed period" and the document must be timely "deposited in the mail in the United States" in a properly addressed, postage-prepaid "envelope or other appropriate wrapper."  *Id*. § 7502(a)(2). By their terms, these provisions apply only to the "United States mail," but in 1996 the statute was amended to extend this mailbox rule to any "designated delivery service."  *Id*. § 7502(f)(1).  Specifically, § 7502(f)(1) provides that any reference in § 7502 "to the United States mail shall be treated as including a reference to any designated delivery service" and that any reference to a "postmark" shall be treated as applying "to any date recorded or marked" by the designated  delivery  service  according  to  certain

specifications set forth in the statute.  *Id*.  The Tax Court concluded that Appellants could not avail themselves of this mailbox rule because the particular delivery service used here did not fall within the statutory definition of a "designated delivery service."  We agree.

Unlike Federal Rule of Appellate Procedure 25(a)(2)(ii), which applies a mailbox rule to the timely delivery of a brief to "a third-party commercial carrier," § 7502 does not allow taxpayers to use the services of *any* bona fide commercial courier.  Instead, the statute specifies that a particular "delivery service provided by a trade or business" will count as a "designated delivery service" only "if such service is designated by the Secretary for purposes of this section."  I.R.C. § 7502(f)(2).  The term "Secretary" means "the Secretary of the Treasury or his delegate," *id*. § 7701(a)(11)(B), and here that delegate is the Commissioner (or his further delegate).  In addition to requiring a formal designation, the statute states that the IRS may designate a delivery service "only if [it] determines that such service" meets four enumerated statutory criteria designed to ensure that the delivery service is at least as adequate as the U.S. mail.  *Id*. § 7502(f)(2).  Specifically, these criteria require that a service be "available to the general public"; that it be "at least as timely and reliable on a regular basis as the United States mail"; that it employ specified methods for showing "the date on which such item was given to such trade or business for delivery"; and that it meet "such other criteria" as the IRS may prescribe.  *Id*. § 7502(f)(2)(A)–(D).

The year after § 7502(f) was added, the IRS published Revenue Procedure 97-19, which outlined the additional criteria that a delivery service must meet before it can be designated under that section.  *See* Rev. Proc. 97-19, § 4,

1997-1 C.B. 644, 645.  This document also made clear that private couriers seeking designation under § 7502(f) would not receive a blanket designation for every service they offered; rather, the IRS announced that "[d]esignation will be determined with respect to each type of delivery service offered by a [courier] (e.g., next business morning delivery, next business day delivery, etc.)." *Id.* § 3.03.  Beginning with Notice 97-26 in 1997, *see* 1997-1 C.B. 413, the IRS has published lists in the Internal Revenue Bulletin of those services that it has designated under § 7502(f).  At the time of the delivery at issue in this case, the operative list of designated services was set forth in IRS Notice 2004-83, which designated particular delivery services offered by only three companies, FedEx, DHL, and UPS.  *See* 2004-2 C.B. 1030.  As to FedEx, the notice designated five particular delivery services under § 7502(f), including "FedEx Priority Overnight" and "FedEx Standard Overnight," but not "FedEx First Overnight." *Id.*  The notice also specifically stated that "DHL, FedEx, and UPS are not designated with respect to any type of delivery service not identified above." *Id.*  Although the designated list had not been changed in more than 10 years, the IRS coincidentally updated the list effective May 6, 2015—just two weeks after the package in question here was delivered to the Tax Court—and the new list specifically added "FedEx First Overnight" and two other FedEx services.  *See* 2015-21 I.R.B. 984.

Appellants contend that "FedEx First Overnight" should be deemed to be essentially the same delivery service as "FedEx Priority Overnight" and "FedEx Standard Overnight," and that therefore the service Appellants used here is actually covered by the then-existing designations in Notice 2004-83.  Alternatively, Appellants argue that, because FedEx First Overnight was indisputably *eligible* for

designation on the day they used it, and was formally designated just two weeks later, Appellants should be deemed to have substantially complied with § 7502(f)'s mailbox rule.  These arguments cannot be squared with the language of the statute.

Congress did not merely require that a private delivery service meet certain functional criteria concerning the operation of that delivery service; it also pointedly insisted that the service must be "*designated* by the Secretary for purposes of this section."  I.R.C. § 7502(f)(2) (emphasis added).  Given the wide range of documents that are eligible for § 7502(f)'s mailbox rule and the need for clear-cut rules on questions of timeliness, Congress understandably elected to establish a quality-control regime in which the IRS would vet *each* such service in advance and then issue bright-line designations as to which services are subject to the mailbox rule and which are not.  The statutory language also makes clear that there must be separate designations for each "service" offered by a private courier—and not merely a designation of the courier itself—because § 7502(f) expressly distinguishes between the "trade or business" that engages in delivery of packages (*e.g.*, FedEx) and the various "delivery service[s]" by which it does so (*e.g.*, FedEx Priority Overnight).  *See id.* (Secretary may designate a "delivery service provided by a trade or business" if, *inter alia*, the service records "the date on which [an] item [to be delivered] was given to such *trade or business* for delivery" (emphasis added)).  This additional requirement of separate formal designations of each "service" offered by a given "trade or business" would be read out of the statute if we were to accept Appellants' invitation to stretch the existing designations to cover *other* similar services offered by a particular courier.  And the same would be true if we accepted Appellants' argument that use of a non-designated

service should be deemed to substantially comply with the statute.

Because the particular service Appellants used here was not on the IRS's formal list of designated delivery services, the Tax Court correctly held that § 7502(f) was inapplicable, and Appellants' petitions therefore cannot be deemed to have been delivered to the Tax Court on the date when Appellants gave them to FedEx.  Because the Tax Court did not receive the petitions until one day after the April 22, 2015 due date, the petitions were untimely.

## III

Appellants argue that, even if the petitions were untimely, § 6213(a)'s 90-day deadline should be subject to equitable exceptions, such as equitable tolling and waiver.  But no such exceptions may be applied if the deadline is jurisdictional, *Duggan*, 879 F.3d at 1031, and we agree with the Tax Court that § 6213(a)'s time limits are jurisdictional.[6]

---

[6] The Commissioner argues that we should not reach this issue because Appellants did not contend in the Tax Court that § 6213(a)'s deadline was not jurisdictional.  But "'we have discretion'" to reach an otherwise-forfeited issue in appropriate circumstances, *see G&G Prods. LLC v. Rusic*, 902 F.3d 940, 950 (9th Cir. 2018) (citation omitted), especially when (as here) "'the issue presented is purely one of law and either does not depend on the factual record developed below, or the pertinent record has been fully developed.'" *Cold Mountain v. Garber*, 375 F.3d 884, 891 (9th Cir. 2004) (citation omitted).  Moreover, the Tax Court, sitting en banc, had specifically reaffirmed that § 6213(a) is jurisdictional before the Tax Court ruled in Appellants' case, *see Guralnik*, 146 T.C. at 238, and the Tax Court expressly held that it was jurisdictional in Appellants' case.  Appellants' failure to raise the issue below thus changed nothing.  And the issue has been well briefed by both sides, including with the helpful participation of *amicus curiae* from a law school clinic.

As Appellants acknowledge, controlling Ninth Circuit precedent holds that § 6213(a) imposes jurisdictional requirements and that, consequently, the Tax Court's "'jurisdiction to redetermine a deficiency in tax depends upon a valid notice of deficiency *and a timely filed petition*.'" *See*, *e.g.*, *Meruelo v. Comm'r*, 691 F.3d 1108, 1115 (9th Cir. 2012) (emphasis added) (citation omitted). Indeed, we have consistently adopted a jurisdictional reading of this statute (or its predecessor version, including one governing appeals to what was then the Board of Tax Appeals) for more than 80 years. *See*, *e.g.*, *Scar v. Comm'r*, 814 F.2d 1363, 1366 (9th Cir. 1987); *Healy v. Comm'r*, 351 F.2d 602, 603 (9th Cir. 1965); *Di Prospero v. Comm'r*, 176 F.2d 76, 77 (9th Cir. 1949); *Edward Barron Estate Co. v. Comm'r*, 93 F.2d 751, 753 (9th Cir. 1937). Other circuits are in accord, some of them for even longer periods of time. *See*, *e.g.*, *Tilden v. Comm'r*, 846 F.3d 882, 886 (7th Cir. 2017) ("For many decades the Tax Court and multiple courts of appeals have deemed § 6213(a) as a whole to be a jurisdictional limit on the Tax Court's adjudicatory competence.") (collecting cases); *Lewis-Hall Iron Works v. Blair*, 23 F.2d 972, 974 (D.C. Cir. 1928). As a three-judge panel, we are bound to follow this on-point Ninth Circuit precedent unless intervening authority from the Supreme Court or our en banc court has "undercut the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable." *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc). Appellants contend that the Supreme Court's recent jurisprudence addressing when statutory deadlines should be deemed jurisdictional *has* undermined this settled precedent and requires us to reach a different conclusion here. The Seventh Circuit rejected a comparable argument in *Tilden*, and we likewise reject it here.

In a series of recent cases, the Supreme Court has tried "'to bring some discipline to the use' of the term 'jurisdiction.'" *Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 153 (2013) (quoting *Henderson v. Shinseki*, 562 U.S. 428, 435 (2011)). Given that labeling a statutory requirement as jurisdictional produces "harsh consequences"—such as the obligation to enforce it *sua sponte*, or upon a party's belated objection, and to do so without regard to equitable considerations—the Court has clarified that "procedural rules, including time bars, cabin a court's power only if Congress has clearly stated as much." *United States v. Kwai Fun Wong*, 575 U.S. 402, 409 (2015) (cleaned up). This clear statement rule does not require that Congress "incant magic words in order to speak clearly," and so the absence of the word "jurisdiction" is not necessarily dispositive. *Auburn Reg'l*, 568 U.S. at 153. "But traditional tools of statutory construction must plainly show that Congress imbued a procedural bar with jurisdictional consequences." *Kwai Fun Wong*, 575 U.S. at 410. "Congress must do something special, beyond setting an exception-free deadline," in order to create a *jurisdictional* requirement, and that remains true "even when the time limit is important (most are) and even when it is framed in mandatory terms (again, most are)." *Id.* Considering the "'text, context, and relevant historical treatment' of the provision at issue," *Musacchio v. United States*, 136 S. Ct. 709, 717 (2016) (quoting *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 166 (2010)), we conclude that Congress has indeed done "something special" to "plainly show" that § 6213's time limit is "imbued . . . with jurisdictional consequences." *Kwai Fun Wong*, 575 U.S. at 410. Specifically, three features of the statute confirm that its time limit for filing a petition in the Tax Court is jurisdictional.

First, § 6213(a) does use the magic word "jurisdiction" with respect to *one* aspect of the Tax Court's power concerning deficiency redeterminations, thereby confirming that the provision as a whole should be understood as speaking to the manner in which the Tax Court acquires subject matter jurisdiction in such cases.  In authorizing taxpayers to seek in the Tax Court, "[w]ithin 90 days, or 150 days if the notice is addressed to a person outside the United States," a "redetermination of the deficiency" set forth in a "notice of deficiency authorized in section 6212," § 6213(a) also states that, except in specified circumstances, the IRS may not begin proceedings to collect that deficiency until any such Tax Court proceedings have been completed. I.R.C. § 6213(a).**[7]**   The statute further provides that, notwithstanding the normal statutory bar against enjoining the collection of taxes, *see id*. § 7421(a), the IRS "may be enjoined" from violating this no-collection prohibition "by a proceeding in the proper court, *including the Tax Court*, and a refund may be ordered by such court of any amount collected within the period during which the [IRS] is prohibited from collecting by levy or through a proceeding in court under the provisions of this subsection."   *Id*.

---

**[7]** The relevant sentence in § 6213(a) states:

> Except as otherwise provided in section 6851, 6852, or 6861 no assessment of a deficiency in respect of any tax imposed by subtitle A, or B, chapter 41, 42, 43, or 44 and no levy or proceeding in court for its collection shall be made, begun, or prosecuted until such notice has been mailed to the taxpayer, nor until the expiration of such 90-day or 150-day period, as the case may be, nor, if a petition has been filed with the Tax Court, until the decision of the Tax Court has become final.

I.R.C. § 6213(a).

§ 6213(a) (emphasis added).  The statute then expressly states, however, that the Tax Court's "jurisdiction" to enter such an injunctive order depends upon the *timely filing of a petition*:  "The Tax Court *shall have no jurisdiction* to enjoin any action or proceeding or order any refund under this subsection *unless a timely petition for a redetermination of the deficiency has been filed* and then only in respect of the deficiency that is the subject of such petition."  *Id*. (emphasis added).

Appellants contend that this language in § 6213(a) merely strips the Tax Court of jurisdiction to grant this particular *remedy* in the case of an untimely petition and does not otherwise address the Tax Court's jurisdiction over the *case*.  We agree with the Seventh Circuit that it is "very hard" to read the language of § 6213(a) that way.  *Tilden*, 846 F.3d at 886.  By also specifying that the Tax Court lacks "jurisdiction" to issue such an injunction "*unless*" a petition has been filed (and then only if the petition is "timely"), § 6213(a) seems clearly to reflect an understanding that the manner in which the Tax Court *acquires* jurisdiction over a deficiency dispute is through the filing of a "timely petition." I.R.C. § 6213(a) (emphasis added).

This reading of § 6213(a) is strongly confirmed by considering how the statute phrases the no-collection prohibition that this injunctive power is meant to enforce. The IRS is subject to a prohibition on collection proceedings "until such notice [of deficiency] has been mailed to the taxpayer," and thereafter "until the expiration of such 90-day or 150-day period, as the case may be," for filing a petition and, "if a petition has been filed with the Tax Court, until the decision of the Tax Court has become final."  *Id*.  Under Appellants' non-jurisdictional reading of § 6213(a), this no-collection prohibition would *lapse* at the end of the 90-day

period but would then *revive* if the Tax Court subsequently decides to accept a late-filed petition.  Nothing in the statute suggests that such a discontinuity was contemplated; on the contrary, the three successive "until" clauses in the relevant sentence of § 6213(a) seem unmistakably to refer to a single unbroken time period.  *See supra* note 7 (quoting the full relevant sentence).  To make matters worse, Appellants' reading would mean that, having accepted a late-filed petition and having thus re-activated the prohibition on collection, the Tax Court would then unquestionably lack jurisdiction to enjoin violations of that prohibition—thereby necessitating a *separate* court proceeding in the district court to do so.  Nothing in the statute suggests that Congress intended to pointlessly require such a peculiar dual-track mode of procedure.  The only sensible reading of the statute is that, when no petition is timely filed, the Tax Court's jurisdiction to enjoin collection ends on day 91 because at that point any possibility of invoking the Tax Court's jurisdiction *at all* has ended, and with it, so too the underlying temporary prohibition on collection has likewise definitively ended.

Second, the broader statutory "context" in which § 6213(a) operates confirms that it imposes jurisdictional requirements.  A taxpayer is not *required* to file a petition for redetermination of a deficiency in the Tax Court; the taxpayer always has the option of instead paying the disputed sum, filing a claim for a refund, and then (if the refund is denied) filing a suit for refund in the district court.  *See* I.R.C. §§ 6511(a), 6532(a), 7422.  But if the taxpayer *does* file a petition in the Tax Court, then a decision "dismissing the proceeding shall be considered as its decision that the deficiency is the amount determined by the [IRS]," *id*. § 7459(d), and such decision as to "amount" is entitled to preclusive effect in subsequent proceedings

between the taxpayer and the IRS, *see Malat v. Comm'r*, 302 F.2d 700, 706 (9th Cir. 1962). However, there is no such "decision" as to "amount," and no preclusive effect, if the Tax Court's "dismissal *is for lack of jurisdiction*." 26 U.S.C. § 7459(d) (emphasis added). Under Appellants' non-jurisdictional reading of § 6213(a), the Tax Court's dismissal of a petition as untimely could potentially have the perverse effect of barring the taxpayer from later challenging the amount in a refund suit—ironically yielding precisely the sort of "harsh consequence[]" that the Supreme Court's recent "jurisdictional" jurisprudence has sought to avoid. *Kwai Fun Wong*, 575 U.S. at 409. That peculiar outcome is avoided if § 6213(a) is read as being jurisdictional, because then dismissals for failure to meet its timing requirement would fall within § 7459(d)'s safe-harbor denying preclusive effect to Tax Court dismissals "for lack of jurisdiction." Section 7459(d) thus confirms what the language of § 6213(a) already suggests, which is that the timing requirement in the latter section is properly understood to be jurisdictional.

Third, the "'historical treatment' of the provision at issue," *Mussachio*, 136 S. Ct. at 717, further confirms that § 6213(a) imposes a jurisdictional time limit. As noted earlier, the circuits have uniformly adopted a jurisdictional reading of § 6213(a) or its predecessor since at least 1928. *See supra* at 20. Congress presumptively "'legislates against the backdrop of existing law,'" *Parker Drilling Mgmt. Servs., Ltd. v. Newton*, 139 S. Ct. 1881, 1890 (2019) (citation omitted), and despite multiple amendments to the Code (including two substantial overhauls in 1954 and 1986), Congress has never seen fit to disturb this long-settled understanding of § 6213(a). *Cf. Fort Bend County v. Davis*, 139 S. Ct. 1843, 1849 (2019) ("[T]he Court has stated it would treat a requirement as jurisdictional when a long line

of Supreme Court decisions left undisturbed by Congress attached a jurisdictional label to the prescription." (cleaned up)).   On the contrary, by adding in 1988 the above-discussed language about Tax Court "jurisdiction" to enjoin collection during the temporary prohibition period, *see* Pub. L. No. 100-647, § 6243(a), 102 Stat. 3342, 3749 (1988), Congress has *confirmed* the pre-existing jurisdictional understanding of § 6213(a).

Accordingly, we agree with the Tax Court's conclusion that the untimeliness of the petitions deprived it of jurisdiction to redetermine the deficiencies asserted against Appellants.

**IV**

Lastly, we reject Organic Cannabis's contention that we should declare invalid the tax deficiency notice sent to it—a ruling that would separately defeat the Tax Court's jurisdiction but that would do so in a way that assertedly "strips the IRS of power to assess taxes based on that notice." *Napoliello*, 655 F.3d at 1063.   Organic Cannabis contends that the notice was invalid because it was improperly addressed and—given Organic Cannabis's late filing of its petition—the IRS's use of an incorrect address was not harmless error.   The Tax Court held that, even assuming the notice was improperly addressed, it was still valid because Organic Cannabis suffered no prejudice given that it actually received the notice 78 days before a petition in the Tax Court was due.   We agree that the deficiency notice sent to Organic Cannabis is valid, but we reach that conclusion for the simpler reason that it was not misaddressed at all.

For purposes of sending a notice of deficiency to a taxpayer, it is generally "sufficient" if the IRS mails the notice to the taxpayer's "last known address."   I.R.C.

§ 6212(b)(1). Organic Cannabis agrees that the last known address the IRS should have used is "P.O. Box 5286, Santa Rosa, CA 95402-5286." Organic Cannabis notes that the address listed in the IRS's mailing log omitted "P.O. Box 5286" and instead simply listed the address that was used as "Santa Rosa, CA 95402-5286," and Organic Cannabis argues that the actual envelope used for mailing must be presumed to have been similarly misaddressed. But even assuming that the address was listed the same way on the envelope as on the mailing log, we conclude that the envelope was not misaddressed.

We take judicial notice of the fact that the U.S. Postal Service has reserved the five-digit ZIP code "95402" solely for P.O. Boxes in Santa Rosa.[8] *See Dudum v. Arntz*, 640 F.3d 1098, 1101 n.6 (9th Cir. 2011) (judicial notice may be taken of official information that is posted on a government website and that is "'not subject to reasonable dispute'" (quoting Fed. R. Evid. 201(b))). By using the Zip Code "95402," the IRS thereby designated that the item was addressed *to a P.O. Box* for that Zip Code in Santa Rosa, and the additional four digits that the IRS added to that Zip Code—"5286"—provided the relevant P.O. Box number.[9] Thus, contrary to Organic Cannabis's contention that the IRS failed to address the envelope to "P.O. Box 5286," the IRS communicated precisely that information to the U.S.

---

[8] *See* U.S. Postal Serv., *Look Up a ZIP Code*, *By City and State*, https://tools.usps.com/zip-code-lookup.htm?bycitystate (entering inputs "Santa Rosa" and "California" yields eight Zip Codes, and "95402" contains the notation "This ZIP Code used for a specific PO BOX").

[9] *See* U.S. Postal Serv., *ZIP Code - The Basics*, https://faq.usps.com/s/article/ZIP-Code-The-Basics ("Please note that the ZIP+4 Code will likely include the actual PO Box number in the +4 part of the ZIP Code.").

Postal Service in the address it used, which was therefore sufficient.  As a result, there is no basis for declaring Organic Cannabis's notice of deficiency to be invalid.

\*          \*          \*

We affirm the Tax Court's dismissal of Appellants' petitions for lack of jurisdiction.

**AFFIRMED.**